**Rudolph V. CAMPBELL, Jr.,**
**Plaintiff-Appellant,**

v.

**James GREER, et al.,**
**Defendants-Appellees.**

No. 86–2256.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 1987.

Decided Sept. 9, 1987.

Rehearing and Rehearing En Banc
Denied Nov. 19, 1987.

James S. Whitehead, Sidley & Austin, Chicago, Ill., for plaintiff-appellant.

William Frazier, Asst. Ill., Atty. Gen., Patricia Rosen, Ill. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and WILL, Senior District Judge.*

POSNER, Circuit Judge.

Rudolph Campbell, an inmate at the Illinois state prison at Menard, appeals from a judgment for the Illinois prison officials and guards whom Campbell sued under section 1 of the Civil Rights Act of 1871, now 42 U.S.C. § 1983. The suit charged them with having deprived Campbell of his right to be free from cruel and unusual punishments, a right granted federal prisoners by the Eighth Amendment and extended to state prisoners by interpretation of the Fourteenth Amendment. By consent of the parties, the trial was conducted before a federal magistrate. Campbell and his witnesses (inmates all) testified that he had learned he was the target for a "hit" by other inmates and had requested the defendants to be sure to leave his cell on "deadlock," but that they had neglected to do so and, as a result, when the cells were opened from a centrally located locking-and-unlocking station the "hit men" entered his cell and stabbed him repeatedly. To "deadlock" a cell so that it remains locked when the master switch is thrown open requires the guard to turn a second lock in the door, and this wasn't done. The defendants did not deny the stabbing but said that Campbell had never asked any of them to deadlock his cell. The jury brought in a verdict for the defendants. Campbell wants a new trial. He says that the instructions were erroneous and that the defendants' counsel should not have been allowed to bring out, in cross-examining him, the fact that he was in Menard

---

* Hon. Hubert L. Will of the Northern District of Illinois, sitting by designation.

as a result of having been convicted of rape.

■ The magistrate gave the following instruction (we have corrected the punctuation slightly), to which Campbell objects:

In order for plaintiff to prevail it must be shown that defendants actually intended to deprive him of reasonable protection, or that defendants acted with deliberate indifference to plaintiff's legitimate need for protection. When I use the phrase "deliberate indifference" I mean conduct which intentionally or deliberately or recklessly ignores any person's constitutional rights. Deliberate indifference is established only if there is actual knowledge of impending harm rather than a mere suspicion that plaintiffs would be assaulted and [if] the defendants consciously and culpably refused to take steps to prevent this assault.

Mere negligence or inadvertence does not constitute deliberate indifference.

We find no error in this instruction, though we would prefer to have seen it worded less legalistically, with shorter sentences and less reliance on words that are not a secure part of most people's vocabulary, such as "culpable." But if jury instructions had to be in Basic English to pass muster on appellate review, few jury verdicts would be upheld.

The instruction follows closely the standard we announced in *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.1985). See also *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1094 (7th Cir.1986). In *Duckworth* a prisoner had been killed and several seriously injured when a prison bus caught fire and the prisoners' egress was impeded by measures that had been taken to make the bus secure. In reversing a judgment for the plaintiffs we said that the prison officials who were responsible for those measures would not have been liable even if they had been negligent or even grossly negligent in failing to foresee the danger of a fire and strike a reasonable balance between that danger and the danger of an escape. Negligence, and *a fortiori* gross negligence, would be enough for

ordinary tort liability but the Eighth Amendment is not a tort statute. Liability under the Eighth Amendment requires punishment, and punishment requires more than negligence, whether ordinary or gross. It requires, at a minimum, that the prison officials have realized there was imminent danger and have refused—consciously refused, knowingly refused—to do anything about it. The Supreme Court quoted our *Duckworth* standard with apparent approval in *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).

The defendants in this case likewise could not be held liable unless they were shown to have had "actual knowledge of impending harm" and to have "consciously and culpably refused to take steps to prevent" it from occurring, as the instruction stated. If Campbell had told the prison staff that he was the target of a "hit" and his cell should therefore be placed on "deadlock" (the standard protective measure in such a case, as the defendants concede), and the staff misunderstood or forgot or inadvertently deadlocked the wrong cell or disbelieved him or got the time wrong, these facts might demonstrate negligence or even gross negligence but would not be "punishment" as we defined it in *Duckworth v. Franzen*. Only if the defendants believed that Campbell was in serious danger and they decided to do nothing would they be liable. That was indeed a possible interpretation of the facts. If the jury had thought that Campbell and his witnesses were telling the truth, it could have concluded that the defendants must have known of the danger to him and must have deliberately refused to do anything about it. It is not unknown for guards to take a strong dislike to a particular prisoner even to the point of refusing to take measures to protect him from a "hit"; he might be unpopular among his fellow inmates for the same reasons he is unpopular among the guards. Guards who do this are reckless (or worse) in the criminal or quasi-criminal sense that we said in *Duckworth v. Franzen* is the only sense of recklessness that is relevant to liability for

inflicting cruel and unusual punishments. Punishment is not an accidental act.

Although we think the instruction was correct, we add that this is not a case in which the nuances of the instructions were likely to spell the difference between victory and defeat for the plaintiff. The jury believed either the plaintiff and his witnesses, or the defendants. The former testified to Campbell's having repeatedly warned the defendants of his peril; if the jury believed them it was quite likely to infer intentional or reckless misconduct from the defendants' failure to take the standard simple precaution of deadlocking his cell. If instead the jury believed the defendants, it would exonerate them from any wrongdoing, since they testified that Campbell never told them he was in danger. The essence of this case was credibility, not instructions.

■ But this point merely brings to the fore Campbell's second ground for a new trial—the use of his rape conviction to impeach his credibility as a witness. This ground requires us to consider the vexing question of the proper use of a criminal conviction to impeach a witness in a civil trial. Discussed at length—but without conclusion—in *Christmas v. Sanders*, 759 F.2d 1284, 1289–91 (7th Cir.1985), it is a question of first impression in this circuit. For a comprehensive and up-to-date discussion see Note, *Prior Convictions Offered for Impeachment in Civil Trials: The Interaction of Federal Rules of Evidence 609(a) and 403*, 54 Fordham L.Rev. 1063 (1986).

The use of prior convictions to undermine the confidence of the trier of fact that a witness is telling the truth is addressed in Rule 609(a) of the Federal Rules of Evidence, which provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines

that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

Campbell's first submission is that subsection (1) of this rule required the magistrate, before admitting the evidence of Campbell's conviction for rape, to balance its prejudicial effect against its probative value. We disagree. The rule requires such balancing only when there is prejudicial effect "to the defendant," and Campbell is the plaintiff. If the defendant is not prejudiced, and the evidence otherwise satisfies the requirements of the rule, it is admissible, period; at least that is what the rule seems to say. Campbell argues that it would be absurd to read the rule literally, for that would allow a defendant in a civil case, but not a plaintiff, to complain about the use of his criminal record to impeach. That would indeed be absurd. It would load the dice in favor of defendants in civil cases, even though it is often a matter of happenstance in a civil suit which party is plaintiff and which defendant. As is true of many rules and statutes, Rule 609(a) can't mean what it says. It needs some judicial patchwork. We merely disagree with Campbell's suggested patch, which would require a balancing of probative value and prejudicial effect with regard to every witness in every federal trial, civil and criminal, whose testimony the opposing party wanted to impeach with a conviction.

An interpretation of the rule that is more in keeping with its background and legislative history is that the only witness who may demand a balancing of the prejudicial value of his criminal record against its probative effect is the defendant in a criminal trial. As pointed out in the Note of the Advisory Committee on Proposed Rule 609, the dominant approach at common law was "to allow use of felonies generally, without regard to the nature of the particular offense," to be used to impeach a witness's credibility, even when the witness was a criminal defendant, who might be inhibited from taking the witness stand by fear of the adverse impact on his chances of ac-

quittal if the jury learned he was a convicted felon. Despite this danger, Rule 609(a) as drafted by the Advisory Committee and approved by the Supreme Court followed the dominant approach of the common law and thus allowed, without any balancing test for any witness, impeachment by means of felony convictions. A balancing test was added, however, by a subcommittee of the House Committee on the Judiciary. See H.R.Rep. No. 650, 93d Cong., 1st Sess. 11 (1973). The subcommittee's formulation did not contain the words, "to the defendant," and probably was not intended to be limited to criminal defendants; for the full committee, in explaining why it decided to take a different tack and confine impeachment by conviction to convictions of crimes involving dishonesty or false statements, referred to "the deterrent effect upon an accused who might wish to testify, *and even upon a witness who was not the accused." Id.* (emphasis added).

The Senate Judiciary Committee adopted a modified version of the House bill. The Senate bill confined the use of convictions to impeach the credibility of a criminal defendant to prior crimes (whether felonies or misdemeanors) involving dishonesty or false statements, but as to other witnesses restored the House subcommittee's balancing test for convictions, except that, as in the case of criminal defendants, convictions involving dishonesty or false statements could be used to impeach a witness without bothering with a balancing test. See S.Rep. No. 1277, 93d Cong., 2d Sess. 14 (1974), U.S.Code Cong. & Admin.News 1974, p. 7051. If the Senate bill had been enacted, Campbell would be correct that the magistrate was required to balance the probative value (as impeachment) of his conviction for rape (not a crime of dishonesty or false statement as these terms are understood in the present context) against the prejudicial effect of the conviction on his civil case. But the Senate bill was not enacted, as is obvious from a glance at the text of Rule 609(a), which we quoted earlier.

The change is explained in the Conference Report:

the Conference determined that the prejudicial effect to be weighed against the probative value of the conviction is specifically the prejudicial effect *to the defendant.* The danger of prejudice to a witness other than the defendant (such as injury to the witness' reputation in his community) was considered and rejected by the Conference as an element to be weighed in determining admissibility. It was the judgment of the Conference that the danger of prejudice to a nondefendant witness is outweighed by the need for the trier of fact to have as much relevant evidence on the issue of credibility as possible. Such evidence should only be excluded where it presents a danger of improperly influencing the outcome of the trial by persuading the trier of fact to convict the defendant on the basis of his prior criminal record.

H.R.Rep. No. 1597, 93d Cong., 2d Sess. 9–10 (1974), U.S.Code Cong. & Admin.News 1974, p. 7103 (emphasis in original). This could not be clearer. The only prejudicial effect that the judge is to consider in ruling on the admissibility of a prior conviction is the prejudicial effect on the defendant in a criminal trial; as to all other witnesses, prior convictions are admissible for purposes of impeachment without any balancing test. See *Linskey v. Hecker,* 753 F.2d 199, 201 (1st Cir.1985); McCormick on Evidence § 43, at p. 94 (3d ed. 1984); cf. *United States v. Martin,* 562 F.2d 673, 680 n. 16 (D.C.Cir.1977) (dictum).

Some cases, illustrated by *Petty v. Ideco,* 761 F.2d 1146, 1152 (5th Cir.1985), disagree with this conclusion and hold that the balancing test is applicable to any witness, but we do not find these cases persuasive in light of the language and legislative history of Rule 609(a). And while it is true that in *Lenard v. Argento,* 699 F.2d 874, 895 (7th Cir.1983), we upheld the exclusion of a conviction that had been tendered to impeach a witness in a civil case, no one, so far as appears from the opinion, had ever raised a question about the applicability of the balancing test of Rule 609(a). There was no holding that it was applicable, only an assumption based on the failure of any party to put the point in issue. The case

therefore is not authority against our conclusion that the balancing test is applicable only when the prosecutor in a criminal case is trying to impeach the defendant.

■ Campbell has a back-up submission, however. It is that a conviction offered for purposes of impeachment can be excluded under Rule 403, which provides that, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Campbell's argument is not entirely of the back-door variety. Rule 403 is less restrictive than Rule 609(a) is: evidence may be excluded under Rule 403 only if its probative value is *substantially* outweighed by its prejudicial effect, and (a comparison of the wording of the two rules suggests) the party opposing the use of evidence under Rule 403 has the burden of persuading the trial judge to exclude the evidence, whereas under Rule 609(a) the party seeking to use the evidence has the burden of persuasion. In addition, while it is plain from the legislative history that Congress (or at least those members who took an interest in this legislation) was aware and intended to make provision for the situation where a conviction is used to impeach the testimony of a witness in a criminal trial whether or not he is the defendant, it is less clear that Congress intended Rule 609(a) to establish the standard of admissibility for the use of convictions against any witness in a civil trial. Neither the Advisory Committee's note nor the committee reports mention civil trials; and though the hearings and floor debates do—see 120 Cong.Rec. 2376–77, 2379 (1974); *Diggs v. Lyons,* 741 F.2d 577, 581 (3d Cir.1984); Note, *supra,* 54 Fordham L.Rev. at 1071–73—there is always a question whether expressions of view in these settings represent majority sentiment. The use of convictions to impeach a witness in a civil trial appears to be rare, and this may mean that few Congressmen would have been aware of the implications of Rule 609(a) for civil trials such as the one in this case. (Of course, it may be rare only because the threat of impeachment deters parties from calling witnesses who have been convicted of felonies.)

However, the rule is not limited in terms to criminal trials, and some Congressmen as we have just noted thought it would apply to civil trials as well. Moreover, the impression conveyed by the detail of the rule and by the legislative history is that Congress and the Advisory Committee thought they were dealing exhaustively in Rule 609 with the subject of using criminal convictions to impeach witnesses' testimony. If so, Rule 403 is not applicable. That rule is a catch-all. It was not meant to overlap, supplant, or contradict the policy premises of, more specific rules, such as Rule 609. The Advisory Committee's Note to Rule 403 says it "is designed as a guide for the handling of situations for which no specific rules have been formulated." Rule 609(a) is a specific rule governing the admissibility of convictions to impeach a witness's testimony.

We do not pretend that these arguments are conclusive; we point out that one Congressman thought that what is now Rule 403 would permit the exclusion of a previous conviction in exceptional cases, though apparently he favored a version of Rule 609(a) that would not have given even the criminal defendant the benefit of a balancing test. See 120 Cong.Rec. 2381 (1974). For us the clinching argument against the applicability of Rule 403 is the unacceptable implication of the argument, which is that a district judge or magistrate could exclude even convictions for crimes of dishonesty or false statement if convinced that the probative value of such evidence in the circumstances of the case was substantially outweighed by its prejudicial effect. For remember that the balancing test of Rule 403 is not limited to any particular class of evidence. If it overrides the express statement in Rule 609(a)(1) that evidence of prior convictions shall be admissible unless prejudice *to the defendant* outweighs the probative value of the evidence, then it overrides the express statement in Rule 609(a)(2) that evidence of prior convictions involving dishonesty or false

statement is admissible regardless of prejudice to the defendant or anyone else. Yet Congress plainly decided that such evidence should be admissible regardless of its prejudicial effect, even against a criminal defendant; and if it is admissible against a person facing the loss of his liberty and the humiliation of a criminal conviction it must also be admissible against a civil plaintiff or other witness in a civil case.

The point can be generalized: the concerns that drove Congress in Rule 609(a) to modify the common law rule of automatic admissibility of prior convictions for impeachment purposes were focused on the use of such convictions against criminal defendants. Congress was not concerned with the prejudicial effects of their use against any witness in a civil proceeding and did not in Rule 403 seek to undo the common law rule that would permit such use against any witness in a civil or criminal proceeding. It is true that when the Federal Rules of Evidence were adopted the courts were moving away from the common law rule and allowing a criminal defendant to seek exclusion of his prior convictions, whatever the crimes for which he had been convicted, on the basis of undue prejudice. See, e.g., *Luck v. United States*, 348 F.2d 763 (D.C.Cir.1965); Note, *Impeachment by Prior Conviction: Adjusting to Federal Rule of Evidence 609*, 64 Cornell L.Rev. 416, 418 and n. 20 (1979); Note, *supra*, 54 Fordham L.Rev. at 1069. But Congress in Rule 609(a)(2) cut back on the trend, by providing for the automatic admission of convictions for crimes involving dishonesty or false statements. There is no indication that by the catch-all provision in Rule 403 Congress meant to approve the trend in a field where the argument for exclusion was so much weaker: civil trials.

We conclude that Rule 403 has no application to the use of convictions to impeach a witness's testimony in either a criminal or a civil case. This conclusion, when combined with our earlier conclusion that Rule 609(a) does not allow consideration of the prejudicial effect of a prior conviction unless the party who is prejudiced is the defendant in a criminal case, establishes that a civil plaintiff cannot complain about the use of his prior felony convictions to impeach his testimony, no matter how harmful that use is to his chances in the trial. This result was reached on slightly different grounds in *Diggs v. Lyons, supra*. There is contrary authority, see *Diggs v. Lyons*, 471 U.S. 1078, 105 S.Ct. 2157, 85 L.Ed.2d 513 (1985) (White, J., dissenting from denial of certiorari), all stemming from *Shows v. M/V Red Eagle*, 695 F.2d 114, 118 (5th Cir.1983), which treats Rule 403 as "a rule of exclusion that cuts across the rules of evidence," including Rule 609(a). However, *Shows* failed to note the comment of the Advisory Committee that Rule 403 is inapplicable where another rule has dealt exhaustively with the admissibility of a particular class of evidence. Moreover, the only basis that *Shows* offered for its conclusion that Rule 403 applied to impeachment by convictions was a citation to *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1347 (5th Cir.1978), which holds only, and unexceptionably, that evidence not barred by the hearsay rule may still be barred by Rule 403. Evidence may be inadmissible for more than one reason; but where, as in Rule 609(a), Congress has taken pains to specify the conditions for both the admission and the exclusion of a specific class of evidence (convictions), district courts may not use Rule 403 to set that specification at naught. See *United States v. Kuecker*, 740 F.2d 496, 501–02 (7th Cir.1984); *United States v. Kiendra*, 663 F.2d 349, 353–55 (1st Cir.1981) (overruled on other grounds in *Luce v. United States*, 469 U.S. 38, 40, 105 S.Ct. 460, 462, 83 L.Ed.2d 443 (1984)), and *United States v. Wong*, 703 F.2d 65, 67–68 (3d Cir.1983) (per curiam)—all holding that evidence made admissible by Rule 609(a)(2) (convictions involving dishonesty or false statements) may not be excluded under Rule 403. And notice that Rule 609(a) provides that evidence complying with the rule "shall be admitted"; there is no counterpart language in the hearsay rule, which says only, so far as relevant here, that "The following [classes of evidence] are not

excluded by the hearsay rule...." Fed.R. Evid. 803; see also Fed.R.Evid. 802.

The Eighth Circuit has followed *Shows*, but without adding to it. See, e.g., *Czajka v. Hickman*, 703 F.2d 317, 319 (8th Cir. 1983). A chain of precedent is no stronger than its weakest link, which is *Rozier*. The First Circuit recently upheld the exclusion of a conviction under Rule 403, but without any citation of authority. See *Wierstak v. Heffernan*, 789 F.2d 968, 972 (1st Cir.1986).

■ Campbell's final submission is that the defendants should not have been allowed to bring out the nature of his felony, i.e., that it was a rape. They should only have been allowed to bring out the fact that he was a duly convicted felon. There is no precedent for withholding the identity of the felony from the jury when using a conviction to impeach a witness's testimony, and we are not minded to create one. Most jurors have only an indistinct sense of the range of offenses connoted by the term "felony"; defining it as a crime punishable by death or imprisonment for more than one year (the federal—not the universal—definition) would add little to their understanding. Rule 609 and the common law tradition out of which it evolved rest on the common-sense proposition that a person who has flouted society's most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying. If so, this is something a jury should be permitted to take into account in evaluating a witness's believability. The jury cannot do this if all it is told is that the witness was convicted of a "felony." The crime must be named. It always has been where impeachment by a prior conviction has been permitted.

The proposition that felons perjure themselves more often than other, similarly situated witnesses (e.g., a criminal defendant who has not been convicted of a felony or a prisoner in a civil rights suit whose only prior conviction is a misdemeanor) is one of many important empirical assertions about law that have never been tested, and may be false. It is undermined, though not disproved, by psychological studies which show that moral conduct in one situation is not highly correlated with moral conduct in another. See, e.g., Burton, *Generality of Honesty Reconsidered*, 70 Psych.Rev. 481 (1963), and other studies cited in Lawson, *Credibility and Character: A Different Look at an Interminable Problem*, 50 Notre Dame Lawyer 758 (1975), especially at 783–89. These studies may—or may not—imply that a crook is no more likely, or not much more likely, to lie than a law-abiding person. But that crookedness and lying are correlated is the premise of Rule 609(a), is not for us to question, and entitles the jury to know the name of the crime since without that knowledge the jury would be confused and the rule undermined. Moreover, Campbell offers no evidence for his suggestion that a rapist is less likely than a murderer or other felon whose crime does not involve dishonesty or false statement to lie on the stand, or for his suggestion that knowledge that a witness has been convicted of rape is more likely than knowledge that he has been convicted of murder or armed robbery or treason or most of the other felonies we can think of to turn a jury against a witness.

All this is not to say that the opposing party may harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case. He may not. See, e.g., *United States v. Cox*, 536 F.2d 65, 68, 71 (5th Cir.1976). Essentially all the information that the cross-examiner is permitted to elicit is the crime charged, the date, and the disposition. These limitations are well established in the criminal context, see, e.g., *United States v. Dow*, 457 F.2d 246, 250 (7th Cir.1972); *United States v. Castro*, 788 F.2d 1240, 1246 (7th Cir.1986), and, as we can think of no reason why they should not apply equally in civil cases, we hold that they do—a conclusion foreshadowed by *Rascon v. Hardiman*, 803 F.2d 269, 277–78 (7th Cir.1986). They may have been exceeded here. There was no reason for

defendants' counsel to ask Campbell where the rape had occurred—other than to bring out the fact that it had occurred in the same community in which his civil rights case was being tried and from which most of the jurors probably came. There was no reason for defendants' counsel in opening argument to refer to Campbell as a "convicted rapist." However, we do not believe—and we do not understand Campbell to be arguing—that these excesses standing by themselves warrant a new trial. And they do stand by themselves, for we can find no other error in the conduct of the trial.

AFFIRMED.

WILL, Senior District Judge, concurring.

I agree that, given the fact that the ultimate question the jury determined in this case was one of the credibility of the plaintiff's and defendant's witnesses and that the trial judge's errors, if any, on the admissibility of evidence and instructions were not material, the jury's verdict should be affirmed. I write separately, however, because I believe some of Judge Posner's opinion is erroneous dictum.

As the opinion recognizes, a literal reading of Rule 609(a) of the Federal Rules of Evidence would be absurd in civil cases in that it would allow counsel for a defendant, but not for a plaintiff, to object to the admissibility of his or her clients or witnesses' criminal records for impeachment purposes. It would, as he says, load the dice in favor of defendants in civil cases even though it is often fortuitous who is the plaintiff and who is the defendant. He suggests that it needs some "judicial patchwork." To that end, he concludes that, given its background and legislative history, Rule 609(a) should be read, though it is not expressly so limited, to apply only in criminal cases. This, he finds, eliminates the patent absurdity which would follow if it applied in civil cases as well.

He then goes on to conclude that, since Congress dealt specifically in Rule 609(a) with the question of the admissibility of prior convictions, Rule 403 which permits the exclusion of any relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, ..." is inapplicable to prior conviction evidence in civil, as well as in criminal, cases. If Rule 609(a) is read, through judicial patchwork, to apply only to criminal cases, I find it illogical, as well as unnecessary, to conclude that Rule 403 is never applicable to prior conviction evidence in civil cases. That conclusion is inconsistent with what some members of Congress clearly intended as Judge Posner's opinion points out, as well as a number of prior decisions. *Shows v. M/V Red Eagle*, 695 F.2d 114, 118–119 (5th Cir.1983); *Czajka v. Hickman*, 703 F.2d 317, 318 (8th Cir.1983).

Moreover, since Rule 403 specifically provides for the balancing of other potentially less prejudicial evidence, it seems logical that, in civil cases, it should require balancing with respect to prior convictions whether of parties or witnesses. This is no great burden on the trial judge and obviates the certainty that, in cases where the prejudice clearly outweighs the probative value, the evidence will nevertheless be admitted since the trial judge, under Judge Posner's analysis, has *no* discretion in civil cases to exclude it.

In support of this conclusion, Judge Posner finds it an "unacceptable implication" that Rule 403 would permit a district judge or magistrate to exclude in a civil case even convictions for crimes of dishonesty or false statement if convinced that their probative value was substantially outweighed by their prejudicial effect. This, he points out, would give the trial judge in civil cases broader discretion than Rule 609(a)(2) does in a criminal case. As a result, he concludes that Rule 403 is *never* applicable in a civil case.

This, I believe, is throwing the baby out with the bath. Rule 609(a)(1) provides for balancing probative value only against "prejudicial effect to the *defendant*" not "to the defendant or *anyone else*" as Judge Posner asserts. I find it an "unacceptable implication" that so narrow a specific rule should be generalized to foreclose

application of the broad provisions of Rule 403 in all cases. Rather the only acceptable implication to me is that Rule 609 forecloses application of Rule 403 only to those specific circumstances to which Rule 609 is applicable.

I have confidence that trial judges exercise their discretion under both Rule 609 and Rule 403 in an effort to deal fairly with all parties and witnesses. I believe the trial judge did so in this case although the defense counsel, as Judge Posner suggests, exceeded fair comment over the limited probative value of the prior conviction evidence. If Rule 403 is totally inapplicable in civil cases, this problem of misuse will undoubtedly be exacerbated.

What particularly concerns me is that such a sweeping conclusion is unnecessary to the decision in this case. The trial judge permitted the rape conviction evidence to be received, finding that its probative value as to plaintiff's credibility was not outweighed by its prejudicial effect. That was a judgment call which was not clearly erroneous. Accordingly, affirmance does not require that we write into Rule 403 a novel blanket prohibition against its applicability to prior conviction evidence in all civil and criminal cases making such evidence automatically admissible regardless of its prejudicial potential and opening the door to abuse by counsel. Nor does it require that we find Rule 609 applicable only in criminal cases.

In sum, I agree that Rules 609(a) and 403 in their present form are unclear so far as both criminal and civil trials are concerned. Being generally opposed to "judicial patchwork" on congressional enactments, I am reluctant to hold that Rule 609(a) is applicable only to criminal cases although I agree its language leads to absurd conclusions in civil cases. Moreover, as with the majority's holding that Rule 403 does not apply to prior conviction evidence in civil cases, it is unnecessary to our decision to hold that Rule 609 applies only to criminal cases. I agree, however, that Rule 609 should be so limited and would urge that the rule be amended. Rule 403, amended if deemed necessary, would then, as I believe it

should, be applicable in both criminal and civil cases with the burden on the person opposing the admission of the prior conviction to establish that the potential prejudice substantially outweighs its probative value.

Even when admitted in a civil case, however, evidence of a prior conviction may not, as it may not in a criminal case, be used as a tail to wag the dog, as an effort to prejudice the jury on the merits rather than being simply one element in the determination of credibility. The trial judge has a responsibility to see that it is not. I believe the proper limits of such use were exceeded by defense counsel here but for the reasons stated in Judge Posner's opinion I do not believe a new trial is warranted. Accordingly, I concur.