James **JONES**, Appellant,

v.

**BOARD OF POLICE COMMISSIONERS; Gerald McFadden; Terran Williams; Antoinette Lee; Lawrence Stevens; City of St. Louis; Robert J. Baer; John J. Frank; James E. Mosbacher; William H. Young; Arthur R. Coffey; Mayor Vincent C. Schoemel, Jr., Appellees.**

No. 87–1097.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1987.

Decided April 1, 1988.

Rehearing and Rehearing En Banc Denied May 20, 1988.

Helmut Starr, St. Louis, Mo., for appellant.

David Richard Bohm, St. Louis, Mo., for appellees.

Before McMILLIAN, ARNOLD and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

James Jones, the plaintiff in this 42 U.S. C. § 1983 action for damages, appeals from a judgment entered by the District Court [1] after a jury verdict for the defendants. The incident upon which the action is based occurred in O'Fallon Park in the city of St. Louis on April 13, 1982. There is a sharp dispute as to what transpired that evening.

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

## I.

Jones testified that he stopped in the park to inspect an unusual noise coming from the rear of his vehicle. When shortly thereafter gunshots were fired by an unknown assailant and a bullet shattered the back windshield of his car, he jumped into his automobile and drove out of the park. A chase ensued. Only after leaving the park did he become aware that some of the vehicles following him were police cars.

According to Jones, when the chase ended he stopped his automobile and stepped out, putting his hands in the air. While he was behind the door on the driver's side of his vehicle, the police began firing at him, but none of the bullets struck either him or the car door. Two police officers, Gerald McFadden and Lawrence Stevens, approached Jones without weapons in their hands. They struck him, threw him to the ground, handcuffed him, and while he was lying there someone shot him in the groin.[2]

Defendants' version of the incident is very different. The four police officers named as defendants were assigned to a special detail in O'Fallon Park. Defendants McFadden and Terran Williams were dressed in plain clothes and were operating an unmarked police car. Soon after entering the park, McFadden and Williams passed a black Cadillac driven by Jones. A black man was in the car with him. The Cadillac turned around and pulled up next to the police car, its occupants looking in at the two officers. When the Cadillac pulled away, they decided to follow it.

After rounding a curve, the Cadillac parked near the front of a white Buick. The officers stopped their car and observed the scene with an infrared scope. Jones got out of the Cadillac and walked toward the Buick, holding either a rifle or a shotgun. Jones forced the passenger to get out of the Buick and walk toward the Cadillac.

At this point, McFadden radioed that there was a robbery in progress. He and Williams drove closer to the scene. Using the door of the police car as a shield, McFadden ordered Jones to halt and identified himself as a police officer. Jones fired one shot in McFadden's direction, then turned and fired at another police car that just had arrived. The occupants of this second car, Officers Stevens and Antoinette Lee, ducked as their windshield shattered.

Jones jumped into the Cadillac and sped away. The police followed in hot pursuit, the Cadillac never leaving their sight except for two or three seconds as they rounded a corner. Both McFadden and Stevens fired shots at the Cadillac during the chase.

The Cadillac's flight ended at a police roadblock. It approached the roadblock at a high rate of speed, racing toward a police car driven by Officer Michael Johnson. Johnson and his partner leapt out of their car and Johnson fired three shots at the windshield of the Cadillac.

The Cadillac pulled to the curb. Jones jumped out and started to run. The police fired a number of shots at him from the blockaded intersection. McFadden approached Jones on foot, advising him that he was a police officer and that Jones was under arrest. Jones struggled with McFadden in an attempt to escape, and McFadden struck him with his fist three times. Coming to McFadden's aid, Stevens grabbed and struck Jones. Together the officers placed handcuffs on him. None of the officers fired any shots at Jones after he was handcuffed.

After subduing Jones, the officers discovered that he had suffered a gunshot

---

**2.** It is undisputed that Jones suffered a single gunshot wound to the perineum and that the edges of the wound were burned. The perineum is the region between the thighs, bounded in the male by the scrotum and the anus. Dorland's Medical Dictionary 529–30 (23d ed. 1982). The police deny that anyone shot Jones while he was lying on the ground. There was uncontradicted testimony that it was unlikely that Jones's wound occurred as he claimed, since from that extremely close range the ammunition used by the police would have caused greater injury than Jones actually suffered. The physician who treated Jones's wound testified that the rim of burn around the wound was not excessive, that he did not recall if the burned skin showed any sign of gunpowder, and that he could not speculate as to the distance from which the bullet had been fired.

wound to the perineum. They did not find any weapons, nor did they find the passenger they had seen in the Cadillac.

## II.

Jones was charged with robbery, was tried, and was acquitted. Thereafter, he filed this action against McFadden, Williams, Lee, and Stevens, and against the members of the Board of Police Commissioners of the City of St. Louis, alleging that defendants had deprived him of his liberty without due process of law. Specifically, Jones alleged that the police officers used excessive force in arresting him and that they shot him while he was handcuffed and lying on the ground. At trial, the District Court granted a directed verdict for the Board of Police Commissioners, and the jury returned a verdict for the remaining defendants. The District Court denied plaintiff's motion for a new trial and entered judgment for all defendants.

For reversal, Jones argues that the trial court erred by (1) denying his motion for new trial on the ground that the verdict is contrary to the clear weight of the evidence; (2) failing properly to instruct the jury concerning the officers' liability for use of excessive force; and (3) denying his motion in limine to exclude evidence of his record as a convicted felon and allowing this evidence to be admitted for the purpose of impeaching his credibility as a witness. We affirm.

## III.

■ Jones argues that the verdict is contrary to the clear weight of the evidence and that the District Court therefore abused its discretion by denying his motion for a new trial. "The denial of a motion for a new trial is within the sound discretion of the trial court, and its ruling will be reversed only upon a showing that the court abused its discretion."[3] *Ryko Mfg. Co. v. Eden Servs.*, 823 F.2d 1215, 1221–22 (8th Cir.1987) (citations omitted), *cert. denied,* ── U.S. ──, 108 S.Ct. 751, 98 L.Ed.

2d 763 (1988). The evidence in this case is conflicting, and the jury chose to believe the police officers. Crediting their testimony, it is impossible to conclude that the verdict is against the weight of the evidence. There is substantial evidence that two of the officers saw Jones committing an apparent robbery, that he fled from the scene, that the officers used no more force than reasonably appeared necessary to apprehend and subdue him, and that they did not shoot him after he was handcuffed and lying on the ground. Accordingly, we cannot say that the District Court abused its discretion.

## IV.

Jones contends that the District Court committed plain error by failing to instruct the jury that law enforcement officers may be liable under 42 U.S.C. § 1983 for using excessive force in completing an arrest. The challenged instruction provided:

As stated before, the Fourteenth Amendment to the Federal Constitution provides that no state shall deprive any person of his liberty without due process of law.

The plaintiff in this case, in common with the defendants and all other persons living under the protection of our Constitution, had the legal right at all times not to be deprived, without due process of law, of any liberty secured to him or protected by the Constitution or laws of the United States.

To be deprived of liberty "without due process of law" means to be deprived of liberty without authority of the law. Before the jury can determine, then, whether or not the plaintiff was deprived by the defendants of any of his liberty under the Federal Constitution "without due process of law," the jury must first determine, from a preponderance of the evidence in the case, whether the defendants knowingly did the acts alleged and, if so, whether, under the circumstances shown by the evidence in the case, the defendants acted within or without the

---

[3] This Court has questioned whether we have the authority to overturn as an abuse of discretion a trial court's denial of a motion for a new trial on the ground that the jury's verdict is against the weight of the evidence. *See, e.g.,*

*Chohlis v. Cessna Aircraft Co.,* 760 F.2d 901, 906 (8th Cir.1985); *SCNO Barge Lines, Inc. v. Anderson Clayton & Co.,* 745 F.2d 1188, 1194 (8th Cir.1984). We need not address this issue as we find no abuse of discretion in this case.

bounds of their lawful authority under state law.

For if the defendants acted within the limits of their lawful authority under state law, then the defendants could not have deprived the plaintiff of any liberty "without due process of law," since the Court finds and instructs you that the state law applicable in this case meets the requirements of the Federal Constitution.

At all times the plaintiff in this case had the legal right not to be deprived of any liberty protected by the Constitution or laws of the United States, except by due process of law. To be deprived of liberty "without due process of law" means to be deprived of liberty without authority of law. In this respect, this plaintiff has the same legal rights as have the defendants and as have all people living in the United States.

Jury Instruction No. 11. Jones argues that this instruction permitted the jury to make an unguided determination regarding the validity of defendants' acts under state law.

 When a particular jury instruction is assigned as error, the reviewing court must determine whether the instructions, taken as a whole and viewed in light of the evidence and the applicable law, fairly and adequately submitted the issues in the case to the jury. *Swift v. R.H. Macy's & Co.*, 780 F.2d 1358, 1360–61 (8th Cir.1985). Because Jones's trial counsel made no objection to instruction 11, our review must be limited to determining whether the error, if any, is plain error in the sense that it has produced a miscarriage of justice. *See* Fed.R.Civ.P. 51; *Rogers v. Rulo*, 712 F.2d 363, 368 (8th Cir.1983), *cert. denied*, 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984). The plain error exception is quite narrow and is confined to the exceptional case where the error seriously affected the fairness or the integrity of the trial. *Rogers*, 712 F.2d at 368.

 Reviewing the instructions as a whole, in light of the evidence and the applicable law, we cannot say that instruction 11 constituted plain error. Instruction

10, as well as 11, informed the jury that Jones had a right not to be deprived of liberty without due process of law. Using the expressions "unprovoked," "without just cause or excuse," "maliciously," "wantonly," and "oppressively," instruction 17A correctly described the type of conduct that constitutes excessive force. Although instruction 11 standing alone would not give the jury sufficient guidance, we are satisfied, in view of the other instructions, that the rigorous requirements for reversal under the plain error standard of review have not been met in this case.

V.

Jones argues that the District Court abused its discretion by denying his motion in limine to exclude evidence of his convictions for robbery, rape, and forcible sodomy. Plaintiff argues that the District Court had a duty under Federal Rules of Evidence 403 and 609 to balance the probative value of this evidence against the potential for prejudice, and that the absence of a hearing on the motion in limine or any record of the court's balancing constitutes reversible error. Jones similarly asserts error with regard to the admission, during his cross-examination, of all his prior convictions, and he particularly emphasizes his view that it was unfair to allow the jury to learn of his rape and forcible sodomy convictions.

Federal Rule of Evidence Rule 609(a) provides:

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

Rule 609(a) modifies the common law, which freely allowed the use of prior felonies, without regard to the nature of the particular offense, to impeach a witness's credibility. *See* Fed.R.Evid. 609 advisory committee's note. Subsection (1) requires the trial judge to balance the probative value of the evidence of prior felony convictions against the prejudicial effect "to the defendant." [4] Under subsection (2), a conviction (felony or misdemeanor) involving dishonesty or false statement is, subject to the ten-year time limit imposed by Rule 609(b), always admissible; there is no balancing to be done.

■ With regard to the admissibility of Jones's convictions, Rule 609(a)(1) is clearly not applicable in the present case. Assuming *arguendo* that the Rule does apply to civil cases—and we are not convinced that it does—it is not helpful to Jones as he is the plaintiff in this case. Although at least one other circuit has extended the balancing test of Rule 609(a)(1) to plaintiffs in civil cases, *see Petty v. Ideco*, 761 F.2d 1146, 1152 (5th Cir.1985), we do not believe that this decision can be reconciled with the unambiguous wording of Rule 609(a)(1). The plain language of the Rule simply cannot be read to mean anything other than that the Rule applies only when to admit evidence of prior convictions for impeachment purposes might unduly prejudice "the defendant." Thus, a plaintiff has no standing to invoke Rule 609(a)(1), even if the Rule was intended to apply in civil cases, which we seriously doubt. [5]

■ We turn to Federal Rule of Evidence 403, which provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 403 is a "rule of exclusion that cuts across the rules of evidence." *Shows v. M/V Red Eagle*, 695 F.2d 114, 118 (5th Cir.1983) (citation omitted). In keeping with that broad view of Rule 403, we have held that Rule 609 does not preclude the application of Rule 403's balancing test to evidence of prior convictions offered for impeachment purposes. *See, e.g., Radtke v. Cessna Aircraft Co.*, 707 F.2d 999, 1000 (8th Cir.1983); *Czajka v. Hickman*, 703 F.2d 317, 319 (8th Cir.1983). *Contra Campbell v. Greer*, 831 F.2d 700, 707–08 (7th Cir.1987). In this Circuit, it thus is possible, at least in theory, that evidence of prior convictions admissible under Rule 609 without any balancing test could be excluded under the balancing test of Rule 403. [6]

■ Under Rule 403, the District Court was required to weigh the probative value of the evidence of Jones's criminal record against the danger of unfair prejudice, but was empowered to exclude this evidence only if the court decided that its probative value was *substantially* outweighed by the danger of unfair prejudice. A trial court's ruling as to the admissibility of evidence will not be disturbed unless there is a clear and prejudicial abuse of discretion. *See*

---

**4.** There is considerable difference of opinion as to whether Rule 609(a)(1) is applicable in civil cases. *Compare Campbell v. Greer*, 831 F.2d 700, 703–05 (7th Cir.1987) (Rule 609(a)(1)'s balancing test applies only when the prosecutor in a criminal case is trying to impeach the defendant) *with Petty v. Ideco*, 761 F.2d 1146, 1152 (5th Cir.1985) (Rule 609(a)(1)'s balancing test applies in civil cases).

**5.** In *Campbell, supra* note 5, 831 F.2d 700, the Seventh Circuit held that, with regard to Rule 609(a), the "only prejudicial effect that the judge is to consider in ruling on the admissibility of a prior conviction is the prejudicial effect on the defendant in a criminal trial; as to all other witnesses, prior convictions are admissible for purposes of impeachment without any bal-

ancing test." *Id.* at 704. Other courts have similarly held. *See Linskey v. Hecker*, 753 F.2d 199, 201 (1st Cir.1985). *See also United States v. Martin*, 562 F.2d 673, 680–81 n. 16 (D.C.Cir. 1977) (dictum). While we do not need to decide the issue, we find the Seventh Circuit's reasoning to be very persuasive.

**6.** Evidence of prior convictions admissible after balancing under Rule 609(a)(1) would be admissible *a fortiori* under Rule 403 because 609(a)(1) permits admission of the evidence only when its probative value outweighs its prejudicial effect to the defendant, whereas 403 requires admission of the evidence unless its probative value is substantially outweighed by the danger of unfair prejudice.

*Radtke,* 707 F.2d at 1001 (citing *E.I. du Pont de Nemours & Co. v. Berkley & Co.,* 620 F.2d 1247, 1272 (8th Cir.1980)). We find no such abuse of discretion in this case. While it is part of the conventional wisdom to regard crimes such as robbery, rape, and forcible sodomy as being less probative of a witness's veracity than are offenses involving *crimen falsi,* a number of courts have approved the admission of evidence of such crimes for purposes of assessing credibility. *See, e.g., Campbell,* 831 F.2d at 707–08; *Leno v. Gaughan,* 664 F.2d 314, 315 (1st Cir.1981). Cases such as the one before us, in which the jury had to choose between conflicting versions of the same occurrence, turn on the jury's credibility determinations. The evidence of Jones's prior convictions had probative value to an assessment of his credibility as a witness, and we cannot say that he was unfairly prejudiced by the admission of this evidence.

■ While it would have been preferable for the trial court to have made a record of its balancing of the probative value of Jones's convictions against the danger of unfair prejudice, its failure to do so is harmless when "the substantial rights of the parties" are not affected. *See* Fed.R. Civ.P. 61. *Cf. Czajka,* 703 F.2d at 319. By denying Jones's motion in limine to exclude the evidence of his convictions, the Court necessarily responded to his claims of prejudice. We are satisfied that the Court's failure to make a record of its balancing of probative value against danger of unfair prejudice did not affect Jones's substantial rights.

Jones raises other issues. We have carefully considered them and find them to be without merit. Accordingly, the judgment of the District Court is affirmed.