**Alonzo JONES, Plaintiff,**

v.

**Ernest MORRIS, et al., Defendants.**

No. 83 C 8886.

United States District Court, N.D. Illinois, E.D.

June 29, 1989.

Stateville Correctional Center ("Stateville") in this 42 U.S.C. § 1983 ("Section 1983") lawsuit, alleging the officials had visited cruel and unusual punishment on him in violation of the Eighth Amendment.[1] After suffering the dismissal followed by reversal-and-remand as outlined a bit later in this opinion, the action found its way to this Court's calendar, and the case is at long last ripe for final resolution.

As the first scene in this final act, Jones moved for summary judgment against nine defendants, and all defendants[2] moved for summary judgment. Further discovery ensued, as the result of which Jones voluntarily dismissed all but four of the defendants: Lex Jones, Donald Knudsen ("Knudsen") and Eugene Krause ("Krause") (collectively "Chief Engineers") and Richard DeRobertis ("DeRobertis"). That has left pending (1) cross-motions for summary judgment between Jones and the Chief Engineers and (2) DeRobertis' motion for summary judgment against Jones. For the reasons stated in this memorandum opinion and order, the Chief Engineers' and DeRobertis' motions are granted, Jones' motion is denied and this action is dismissed.

### Case History

Jones has been a Stateville inmate since 1977. Until 1981 he worked there as a plumber, often performing services in the Cellhouse B plumbing tunnel. That "tunnel" is five stories high, and work is performed on scaffolding consisting of foot-wide wooden planks spanning the piping.

On January 19, 1981 Jones was performing routine maintenance work on the scaffolding in Cellhouse B (pursuant to his orders) when the board on which he was standing fractured. Jones began to fall, but he was able to stop his fall by grabbing a nearby pipe. In the process he wrenched

---

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Alonzo Jones ("Jones") initially sued 16 state prison officials and employees at

---

1. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provision (the Eighth Amendment, which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody that Bill of Rights guaranty).

2. At that point the total number of defendants had been effectively reduced to 14 by the deaths of Henry Cowan and Thaddeus Pinkey.

his back and was struck by a simultaneously falling tool box.

On December 5, 1983 Jones filed his pro se Complaint here. It was assigned to then Chief Judge Frank McGarr, who dismissed the Complaint under 28 U.S.C. § 1915(d) for its having failed to state an Eighth Amendment claim. That dismissal was reversed by our Court of Appeals in the "Opinion," 777 F.2d 1277 (7th Cir.1985),[3] which sustained the Complaint's allegation that defendants had acted with reckless disregard of Jones' rights and safety (more on this later). This Court inherited the case on remand.

During the post-remand discovery period Jones attempted to determine which of the 16 defendants potentially bore legal responsibility for his injury. Originally lacking that information, he had joined both "low level" employees (such as the Chief Engineers, who allegedly received complaints directly from scaffold users) and "upper level" people (such as administrative officials who may have had final responsibility for assuring action on such complaints).

Ultimately Jones decided liability could not be attributed to any of the upper level defendants other than DeRobertis. Although Jones had been pursuing summary judgment motions against six upper level defendants (but not DeRobertis), he voluntarily dismissed this action against all upper level people except DeRobertis. That left as defendants only the latter and the three Chief Engineers identified earlier.

### Chief Engineers

Both Jones and the Chief Engineers assert an entitlement to summary judgment on Jones' Eighth Amendment claim.[4]

---

**3.** Citations to the Opinion will refer only to the relevant pages in F.2d, omitting the volume number.

**4.** Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). For that purpose this Court is called on to draw all "reasonable inferences, not every conceivable inference" in

Opinion at 1280 paraphrased the Amendment's literal prohibition of "cruel and unusual punishment" as denoting "deliberate indifference to a prisoner's safety from physical surroundings." For that purpose Opinion at 1280 n. 5 said:

> There must be some indication that, if the matter proceeds beyond this threshold level, such allegations [must] be supported by specific facts such as a history of accidents or a previous request for repairs that had fallen on deaf ears.

Jones has attempted to document such a history, asserting that scaffold boards had broken under him three times before the 1981 accident (Jones Aff. ¶ 6). Jones says he complained to at least six people, including Krause and Knudsen, about the condition of the scaffolding (*id.* ¶¶ 7–8). Almost always Krause or Knudsen responded they were "working on it" (*id.* ¶¶ 9–11). When Jones showed specific boards to Krause, those boards were replaced.

Jones also says he heard Rocco Guglielmucci (his oft-time immediate supervisor) complain to Krause—indeed, Jones says, even more often than he himself did—and to Knudsen as well. Jones also proffered deposition testimony of three other individuals who complained to either Knudsen, Krause or Guglielmucci about the condition of the scaffolding. Three other individuals confirmed that they overheard Jones or others complaining to Guglielmucci.

■ There is a dispute as to the number and frequency of complaints the Chief Engineers received. Knudsen admits having received one complaint in 1977, while Krause acknowledges he received Guglielmucci's complaint (but no others), and Lex Jones says he received no complaints at

the light most favorable to the nonmovant (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987)). Where (as is true here with respect to the Chief Engineers) cross motions are involved, that principle demands a dual perspective that sometimes causes the denial of both motions. In light of this opinion's ultimate ruling in favor of all defendants, the perspective adopted as to factual disputes on each motion is that favoring Jones.

all.[5] Knudsen forwarded a requisition for replacement boards to the business office promptly after he received the complaint, and he knew of no injuries stemming from catwalk work before he ceased to be Chief Engineer in 1978. Krause says he told Guglielmucci to replace some boards, and he replaced some planks himself.

Even Jones' version of the number and frequency of complaints would not in itself be sufficient to prevail here. Jones must also show the Chief Engineers treated those complaints in a manner reflecting "cruel and unusual punishment" of Jones, a standard explicated post-Opinion in *Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir.1985) (citations, including one to the Opinion, omitted):

> If the word "punishment" in cases of prisoner mistreatment is to retain a link with normal usage, the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense. Gross negligence is not enough. Unlike criminal recklessness it does not import danger so great that knowledge of the danger can be inferred; and we remind that the "indifference" to the prisoner's welfare must be "deliberate".... Although some cases contain language more suggestive of the tort definition of recklessness than of the criminal law definition, ... they are cases where the prisoner had failed to prove recklessness even in the tort sense, and it was not important therefore whether he would have had to prove even more in order to win the case.

■ Nor is *Duckworth*'s coupling of the adjective "deliberate" with the noun "indifference" merely accidental. It must always be remembered that the Eighth Amendment prohibits only *punishment*— the intentional infliction of harm. *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987), pointing out the Supreme Court's having "quoted our *Duckworth* standard

with apparent approval in *Whitley v. Albers*, 475 U.S. 312, [321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251] (1986)," made precisely the same point:

> Liability under the Eighth Amendment requires punishment, and punishment requires more than negligence, whether ordinary or gross. It requires, at a minimum, that the prison officials have realized there was imminent danger and have refused—consciously refused, knowingly refused—to do anything about it.

Indeed, even in what may be viewed as the less demanding climate of the Due Process Clause, *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir.1988) has said:

> An act is reckless in the pertinent sense when it reflects complete indifference to risk—when that actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death. See *Model Penal Code* 21 (defining recklessness as "conscious disregard of [a] risk ... [that] manifests extreme indifference to the value of human life").

■ As already suggested in n. 5, Lex Jones is out of the case under any view of the law. As for Knudsen and Krause, the thing that dooms Jones' claim of cruel and unusual punishment is the uncontested fact that those Chief Engineers themselves regularly used the very same scaffolding (Knudsen Dep. 8, Krause Dep. 56–57) and—obviously—neither believed it was unsafe or dangerous (Knudsen Dep. 31, Krause Dep. 76). That cannot be the stuff of which "punishment" of Jones—the deliberate infliction of (or even deliberate exposure to) serious harm—can be molded.

In light of the required reasonable pro–Jones inferences, the evidence may show Knudsen and Krause (more the latter than the former) to have been negligent or perhaps even foolhardy. But there is no reason for this Court to decide whether they

---

**5.** Lex Jones had become Chief Engineer only in January 1981, no more than two weeks before Jones' accident. Nothing suggests Lex Jones had received any complaints or knew of any injuries to anyone before the occurrence. It is difficult to understand how Jones and his counsel, who showed a responsible approach in dismissing out defendants who were unquestionably in the clear, could have continued to bracket Lex Jones with Krause and Knudsen.

might also arguably be viewed as having been deliberately indifferent to safety—maybe their own as well as Jones'. It must be remembered that the cases have used "deliberate indifference" as a useful working synonym—but *not* as a substitute—for the *real* constitutional standard of "cruel and unusual punishment." Particularly on the facts of this case, where any risks that may have been involved from the presence of old boards in the scaffolding were risks shared by Knudsen and Krause themselves, it would be a mistake to focus on any such case-law-developed reformulation of the Eighth Amendment's standard to the exclusion of the language of the Amendment itself. There is no way in which Jones' exposure to working on the scaffolding under the circumstances of this case can be labeled as "punishment," let alone "cruel and unusual punishment." [6]

That renders the only disputed factual issues—the number of complaints actually received by the Chief Engineers and the actual condition of the boards (see C.E. Mem. 3)—nonmaterial in the Rule 56 sense. Even if the boards were old and the complaints were as frequent as Jones claims, the Chief Engineers' conduct would not rise to the level of "cruel and unusual punishment." By their own actions Knudsen and Krause clearly demonstrated the absence of any intention to punish Jones by subjecting him to the same conditions to which they voluntarily exposed themselves. Again they may have been careless, maybe even grossly negligent,[7] but they did not violate Jones' Eighth Amendment rights.

■ Indeed, even were a different conclusion called for on that score (as it is not), none of the Chief Engineers could be held liable here. "Qualified immunity" also insulates them from that prospect.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted) defines such shielding of public officials from Section 1983 exposure as extending to "conduct [that] does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smart v. Simonson,* 867 F.2d 429, 431 (7th Cir.1989) elaborates:

> Recognizing that the operation of this [*Harlow*] standard "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified," [*Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523], the *Anderson* Court held:
>
> > The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in light of the preexisting law the unlawfulness must be *apparent.*
>
> *Id.* at [640, 107 S.Ct. at 3039] (citations omitted) (emphasis added).

To be sure, a deliberate failure to cure a known life threat (for example) was a "clearly established" Eighth Amendment violation in 1981. But the earlier discussion has demonstrated that neither that description nor any other description of the then "clearly established" right fits what is at issue here. Instead any finding of "cruel and unusual punishment" in this case could flow only from so labeling the Chief Engineers' subjection of Jones to conditions *under which they too worked on a voluntary basis*—clearly a groundbreaking type of holding. Certainly it could not be said that such a "violation" was apparent in light of preexisting law, and therefore the Chief Engineers would be entitled to qualified immunity in all events.

All three Chief Engineers' motions for summary judgment must be granted on

---

**6.** Nothing suggests Knudsen and Krause were masochists inflicting punishment on themselves, and thus incidentally doing so on workers such as Jones as well.

**7.** Whatever that term may mean—see Judge Easterbrook's recent invocation of the characterization of "gross negligence as simply negligence 'with the addition of a vituperative epithet'" (*Archie,* 847 F.2d at 1219, quoting *Wilson v. Brett,* [1843] 11 M. & W. 113, 116, 152 Eng. Rep. 737 (Rolfe, B.)).

more than one ground. Jones' corresponding motion must of course be denied.

### *DeRobertis*

 DeRobertis, a Stateville Assistant Warden between 1979 and 1981, has also moved for summary judgment against Jones, although Jones has not responded in kind. Though the factual matrix differs, the legal standards are the same as those dealt with in the preceding section.

DeRobertis' motion pointed out Jones had presented no evidence as to DeRobertis' knowledge of unsafe conditions, thus rendering summary judgment appropriate. Jones' response evaded that result by referring to the affidavit of Robert Hodges, who worked on the Cellhouse B scaffolding in 1978 and 1979. According to Hodges Aff. ¶ 7, he once complained in person to DeRobertis about the unsafe conditions of the scaffolding, asking him to put in a work order. DeRobertis assertedly responded "I'll get right on it" (*id.*).

Clearly that minimal showing could not support a finding of DeRobertis' "cruel and unusual punishment" of someone working on the scaffolding in early 1981. That does not portray "deliberate indifference" in the constitutional sense. No evidence has been presented to show that DeRobertis knew of anything even approaching a dangerous, let alone life-threatening, situation. In fact, Hodges himself only experienced nothing worse than boards moving under him—he sustained no injury (*id.* ¶ 5). His supervisor had injured his knee, but Hodges refers to no other known injuries (*id.* ¶ 6). And Hodges does *not* say he mentioned even those facts to DeRobertis.

Those matters alone entitle DeRobertis to prevail. And if that were not enough, a parity of reasoning on the already-discussed qualified immunity principle serves as an independent basis to defeat Jones' claim against DeRobertis as well.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) teaches:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

On these facts, DeRobertis too is entitled to summary judgment.

### *Conclusion*

Jones asks this Court today to find that a prisoner is subjected to cruel and unusual punishment on facts quite different from those necessarily assumed as the basis of the Opinion (which of course was required to take Jones' complaint at face value). Jones has failed to meet the Eighth Amendment's standard.

There are no genuine issues of material—that is, outcome-determinative—facts. All remaining defendants (the three Chief Engineers and DeRobertis) are entitled to a judgment as a matter of law. This action is dismissed.