**Amelia GORA, Plaintiff–Appellant,**

v.

**John COSTA and Thomas Ginoza, Defendants–Appellees.**

**No. 88–2709.**

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1992.

Decided Aug. 7, 1992.

Charles F. Smith (argued), Skadden, Arps, Slate, Meagher & Flom, Chicago, Ill., for plaintiffs-appellants.

Sharon M. Sullivan, Ruth M. Moscovitch, Asst. Corp. Counsels, Office of Corp. Counsel, Appeals Div., Judson H. Miner, Davis, Miner, Barnhill & Galland, John F. McGuire, Jean Dobrer (argued), Nina Puglia, Asst. Corp. Counsels, Chicago, for defendants-appellees.

Before CUMMINGS and FLAUM, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Various members of the Gora family brought a Section 1983 action against two Chicago police officers, John Costa and Thomas Ginoza. 42 U.S.C. § 1983. In the complaint and at trial the Goras alleged that these police officers entered the Gora house without permission or a warrant and proceeded without provocation to assault numerous members of the Gora family. The Goras alleged that these actions violated the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. The jury found for the defendants on all counts. Plaintiff Amelia Gora appeals.

Two issues are raised by this appeal: (1) Does Amelia Gora have standing to bring

this Section 1983 claim and (2) was evidence of Edmund Gora's past felony convictions and current incarceration properly admitted? We affirm.

## I.

The plaintiffs in this case were Amelia Gora and Mitchell Gora, individually and on behalf of Gregory Gora and Raymond Gora, both minors; Edmund Gora; Steven Gora; John Gora; Elaine Gora; and Nancy Gora. Amelia and Mitchell Gora are the heads of the Gora household and the parents of the other plaintiffs. Officers Costa and Ginoza presented evidence that they went to the Gora home on the night of March 5, 1980, in response to an emergency 911 call. This evidence indicated that Mitchell Gora made an emergency 911 telephone call asking for assistance because of a family fight. Ginoza and Costa testified that when they arrived at the Gora residence Mitchell Gora was waiting outside and that he motioned them to come into the house, asking the police to arrest "him." According to the defense, without identifying "him," Mitchell Gora said he would sign a complaint against "him" and that he wanted "him" locked up before "they kill each other." According to the officers, they followed Mitchell Gora into the house.

The officers testified that when they entered, Edmund Gora appeared on the staircase holding a baseball bat in a threatening way. According to the defense, Officer Costa told Edmund Gora he was under arrest and to put down the bat. Under the defense's version of the events, Edmund Gora then approached Costa with the bat and attempted to strike Costa. Then the two, according to the defense, began to struggle for the bat, and during the struggle Costa hit Edmund Gora in the head with the bat, causing bleeding.

Apparently, Officers Costa and Ginoza left the house and radioed for backup. Under the defense's version of events, some officers entered the house to handcuff Edmund Gora and walk him outside to the police wagon. And under the defense's version, Steven Gora physically attacked Ginoza in an attempt to prevent Edmund

Gora's arrest. Ginoza testified that after he and other officers subdued Steven Gora, Raymond Gora began to pull on Ginoza, urging the officers not to lock up Steven Gora. Ginoza then said he had Raymond arrested and put into the police wagon. After Steven, Raymond, and Edmund Gora were inside the police wagon, Costa testified that Mitchell Gora came up to him and grabbed him, screaming that the police had arrested the "wrong ones." Mitchell Gora was then arrested, according to Costa.

The Goras tell a different version of the events that transpired on March 5, 1980. The Goras alleged in their complaint and at trial that on the night of March 5, 1980, shortly before midnight, Costa and Ginoza burst into their home without permission or warrant. The Goras put on evidence that when the officers entered there was a short exchange of words between Costa and Edmund Gora, and then Costa picked up a baseball bat that was lying in the corner and struck Edmund Gora with this bat. According to the Goras, after Edmund was hit and after the police backup arrived, Costa and Ginoza came back into the house. At this time, they claim Steven was tending to Edmund Gora whose head wound was bleeding profusely. The Goras then claimed that Costa and Ginoza began to beat Steven Gora with their billy clubs and fists, handcuffed him, and dragged him down the stairs feet first allowing his head to hit the stairs on the way down. The Goras claim that Costa and Ginoza further beat Edmund Gora, handcuffed him, and dragged him feet first and unconscious out of the house. Moreover, the Goras further allege that Raymond Gora was unjustifiably and unreasonably beaten. That is, Amelia Gora testified that numerous police officers hovered around Raymond who was curled up in the middle of the street and that these officers repeatedly hit Raymond Gora with billy clubs. The Goras also testified that other officers purposefully held the storm door to the Gora house closed while Nancy Gora's hand was in the door.

The jury returned a verdict in favor of defendants. On August 19, 1988, counsel for the plaintiffs filed a notice of appeal

naming "Amelia Gora *et al.*" As we stated in a prior court order, this notice of appeal gives us jurisdiction over Amelia Gora but does not give us jurisdiction over the other plaintiffs.

## II.

Amelia Gora appeals on evidentiary grounds. Nonetheless, the defendants argue for the first time on appeal that as a matter of law Amelia Gora has no triable Section 1983 claim because she has failed to show that the complained-of conduct deprived her of her rights, privileges, or immunities under the Constitution.[1] More specifically, defendants argue that Amelia Gora's sole complaint is that the actions of Officers Costa and Ginoza in arresting her husband and sons caused her to suffer emotional distress. The defendants argue that in order to recover under Section 1983, Amelia Gora had to show that the conduct deprived her of her rights, privileges, or immunities under the Constitution. And the defendants argue that because Amelia Gora has failed to allege that she was seized or searched, prosecuted or subjected to punishment, the Fourth, Fifth, and Eighth Amendments could not be the basis for her claim but that her only basis for a Section 1983 claim could be the Fourteenth Amendment Due Process Clause. The defendants argue that Amelia Gora's status as a bystander who witnessed police misconduct does not give her grounds for such a claim.

The complaint in this case was first filed in 1982, yet, rather than raising this issue sometime within the nearly ten years between the filing of the complaint and this appeal, the defense waited until appeal to make this argument. Nonetheless, to the extent that the defense is arguing that Amelia Gora lacked standing to sue under Article III of the United States Constitu-

tion, we cannot say that the defense waived this argument.

■ Under Article III's case and controversy requirement, only parties with a real interest or stake in the litigation have standing to sue in federal court. Because these constitutional standing requirements bear on the court's power to entertain a party's claim, *Northside Sanitary Landfill, Inc. v. Thomas*, 804 F.2d 371, 380–81 (7th Cir.1986), an argument that a party lacks standing can be raised at any stage of the proceedings. *See National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 360 (7th Cir.1987) ("A ground for reversal may be presented for the first time on appeal only if it involves a question of jurisdiction or if there are exceptional circumstances requiring as a matter of justice that the waiver rule be set aside.").

■ The standing doctrine does not turn on the merits of the legal claim, but it turns on the question of who is the appropriate party to raise such a claim. Looking to the complaint, we find that Amelia Gora had standing to proceed in this case.

Contrary to the defendants' position, Amelia Gora's claims of injury are not based solely on her status as a bystander to the beatings of her family members. Rather, the complaint alleges that Officers Costa and Ginoza violated the plaintiffs' various constitutional rights when they wrongfully entered the Gora home and when they unjustifiably beat the family members within the home. The complaint indicates that Amelia Gora lived in the family home. In alleging that the police officers wrongfully entered her home, Amelia Gora alleged a personal intrusion into her rights under the Fourth and Fourteenth Amendments. Such an allegation is sufficient to give her standing to bring a cause of action under Section 1983 for this intru-

1. 42 U.S.C. § 1983 reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

sion. *Contrast Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (petitioners who failed to demonstrate that they had a legitimate expectation of privacy in the area searched did not have standing to invoke the Fourth Amendment exclusionary rule).

We further note that for purposes of determining whether Amelia Gora was a proper party in this case, we need not decide whether she could have recovered damages for the emotional distress resulting from the allegedly unconstitutional beatings of her family members that occurred in her presence within and without her home after the police allegedly wrongfully entered this home. Furthermore, considering that the issue of whether Amelia Gora could recover such damages was never raised before or decided by the trial court and considering we have no judgment awarding such damages, there is no judgment or order for us to review on this issue. For these reasons, we cannot affirm on the grounds that Amelia Gora is an improper plaintiff or that she failed, as a matter of law, to state or prove a claim for relief under Section 1983.

■ We now proceed to review the merits of Amelia Gora's argument that the district court committed reversible error when it admitted prejudicial testimony with regard to Edmund Gora's past convictions and current incarceration. We give broad discretion to a district court's evidentiary decisions, and therefore we will only reverse the district court if it abused its discretion in either admitting or excluding evidence. *Geitz v. Lindsey*, 893 F.2d 148, 150 (7th Cir.1990).

In order to preserve an argument that the district court committed a reversible evidentiary error, counsel must object to the admission of such evidence at trial. Fed.R.Evid. 103(a). Defendants argue that Amelia Gora waived any objection she may have had to the admissibility of testimony regarding Edmund Gora's past convictions. We disagree. The plaintiffs filed a motion *in limine* with regard to the use of past convictions and current incarceration. Moreover, counsel and the district judge readdressed these issues at a side bar during trial. This motion and the discussions during the side bar preserved any objections to the admission of such testimony.

In raising her evidentiary claim of error based on the testimony elicited at trial, Amelia Gora points to the following line of questioning of Edmund Gora:

Q. Before [the events of March 5, 1980,] happened, you were a happy family, right?

A. Just like any normal family, yes.

Q. And since that time you are not a happy family?

A. Sometimes yes and sometimes no.

Q. Are there problems in the home as a result of this today?

A. I am sure it's still in everyone's mind, the terror that these policemen did.

Q. Well, how do people behave—members of the family, how do they behave with one another in the home today?

A. We behave A–OK.

Q. You get along with each other now?

A. We always did.

Q. Do you live at home?

A. Right now, yes.

Q. You live at 3945 North Natchez, sir?

A. I reside there when—but not right at this moment.

Q. How long have you been out of the home?

A. I have been out of the home a couple times. I lived in apartments other places. I came back a few times.

Q. When did you leave the home last?

A. Last year.

Q. Are you living in an apartment now?

A. No, I am not.

Q. Where are you living, sir?

A. Behind bars.

Q. Mr. Gora, have you ever been convicted of a felony?

A. Yes, I have.

Q. When?

A. In 1979.

Q. And that was for robbery, wasn't it?

A. Yes, it was.

Q. Have you ever been convicted of any other felony?

A. Yes, last year I was framed for a burglary in the same district that these police officers presided in.

Rule 609 of the Federal Rules of Evidence governs the use of past felony convictions to impeach the credibility of a testifying witness. At the time of the Gora trial Rule 609(a) read as follows:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

The Supreme Court in *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 527, 109 S.Ct. 1981, 1993, 104 L.Ed.2d 557 (1989), held, "Federal Rule of Evidence 609(a)(1) requires a judge to permit impeachment of a civil witness with evidence of prior felony convictions regardless of ensuant unfair prejudice to the witness or the party offering the testimony." In reaching such a conclusion, the Supreme Court rejected the notion that the admission of such evidence is subject to the balancing of probative value against unfair prejudice under Rule 403. *See* Fed.R.Evid. 403.

In *Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir.1987), this court reached the same conclusion that the Supreme Court later reached in *Green*. And, in *Campbell*, although concluding that evidence of past felony convictions, punishable by death or in excess of one year imprisonment, is automatically admissible in civil cases, we defined clear limits on this line of questioning.

As we indicated above, Rule 609 dictates the use of past felony convictions for the purpose of impeaching a witness's veracity and truthfulness. The idea underlying Rule 609, whether right or wrong, is that criminals are more likely to testify untruth-

fully. *Campbell*, 831 F.2d at 707. However, we indicated in *Campbell* that all that is needed to serve the purpose of challenging the witness's veracity is the elicitation of the crime charged, the date, and the disposition. And in fact we held that it is error to elicit any further information for impeachment purposes. *Id.* The Supreme Court's opinion in *Green* does not affect these limitations.

Amelia Gora argues that the manner in which the defense elicited evidence of Amelia's past convictions was improper under this court's precedent. As we explain below, to the extent that Amelia Gora is arguing that the elicitation of testimony regarding Edmund Gora's current incarceration went beyond the limits for permissible uses of testimony for impeaching a witness's credibility under Rule 609, we agree. However, setting aside considerations of questions regarding Edmund Gora's current incarceration, the questions regarding Edmund Gora's past convictions were otherwise appropriate because such questions asked no more than the crime charged, the date, and the disposition.

■■■■ Considering that for purposes of challenging a witness's propensity for truth and veracity opposing parties cannot harp on a witness's past crimes and in fact can elicit no more than the crime charged, the date, and the disposition, it is clear that the defense's questioning with regard to Edmund Gora's current incarceration, which is highly prejudicial, constitutes improper impeachment testimony under Rule 609(a)(1). Rule 609, however, speaks only to the admissibility of evidence for purposes of impeaching a witness's propensity for truthfulness. Concluding that testimony about a witness's current incarceration is inadmissible for purposes of impeaching that witness's credibility does not mean that such testimony is inadmissible for other purposes. To the contrary, just as the details of a witness's prior convictions, although inadmissible for purposes of impeachment, might be admissible for other purposes, *Geitz v. Lindsey*, 893 F.2d 148, 151 (7th Cir.1990), evidence of a witness's current incarceration in limited situations

might be admissible for other purposes. The admissibility of such evidence for purposes other than impeachment is dictated by Rules 401 and 403, meaning that such evidence is admissible if relevant to a material issue and if its probative value outweighs the possibility of unfair prejudice. Fed.R.Evid. 401, 403.

Having said this, we emphasize that evidence of current incarceration is highly prejudicial, and therefore courts should not be quick to admit such evidence. This is particularly true in civil rights cases, because as we emphasized in *Geitz*, civil rights actions which serve an essential deterrent function in hopes of protecting citizens' vital rights "often pit unsympathetic plaintiffs-criminals, or members of the criminal class ... against the guardians of the community's safety...." *Geitz*, 893 F.2d at 151 (citations and quotation marks omitted). And as we emphasized in that case, courts should be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her. *Id.*

In this case, however, although highly prejudicial, we cannot say that the district court abused its discretion in allowing the questioning with regard to Edmund Gora's current incarceration. Before allowing this line of questioning, the district court specifically noted that Edmund Gora had testified that as a result of Officers Costa and Ginoza's actions he developed a negative perception of the law enforcement community. The district court indicated during a side bar that because plaintiffs made this an issue, the defense should be able to ask questions that bear on the issue of whether it was the actions of Costa and Ginoza or whether it was Edmund Gora's current incarceration and/or convictions that lead to Edmund Gora's negative perception of the law enforcement community.

At oral argument, however, appellant's counsel argued that the issue of Edmund Gora's perception of the law enforcement community was an issue without consequence to this case. And therefore counsel argued that the testimony regarding Edmund Gora's current incarceration, if admitted for this purpose, failed to meet Rule 401's general relevancy requirements. *See* Fed.R.Evid. 401. We note, however, that Edmund Gora's testimony about his negative perception of the law enforcement community was not the only evidence of this nature brought out by the plaintiffs. To the contrary, other members of the Gora family, such as John Gora, also testified to their negative reaction to, and fear of, the police as a result of the incident on March 5, 1980. Moreover, in closing argument, plaintiffs' counsel referred to Amelia Gora's current fear of the police in describing the mental anguish that the Goras suffered as a result of Officers Costa and Ginoza's actions. Considering that the plaintiffs focused on the issue of the Gora family's perception of the law enforcement community in order to bolster their claim for emotional distress damages, we cannot say that this was an issue without consequence under Rule 401. And, because of the broad discretion we afford to district courts, we cannot say that the district court abused its discretion under Rule 403 in allowing defense counsel to question Edmund Gora with regard to his current incarceration for purposes of challenging this basis for damages.

 Amelia Gora not only argues that the above testimony was wrongfully elicited at trial, but she also argues that defense counsel's references to Edmund Gora's incarceration improperly highlighted the issue of Edmund Gora's past convictions and current incarceration. In particular Amelia Gora objects to the following remarks:

> What about Edmund? How should you believe Edmund in this case? Well, he was found guilty of resisting in this case by the jury back in '81. However, he continues to tell you that he didn't resist arrest, he didn't do anything, he didn't disrupt, or he didn't go against what the officer said, oh, no. *In fact, he is doing time for burglary. But no, he didn't commit that offense either.*

(Emphasis added).

We first note that it is not improper during closing argument for counsel to briefly refer to admissible evidence with

regard to a witness's past convictions in arguing that such convictions might affect that witness's credibility. The problem, however, is that in this case defense counsel not only referred to Edmund Gora's past convictions in attacking Edmund Gora's credibility, but counsel referred to the fact that Edmund Gora was "doing time." As we indicated above, Edmund Gora's current incarceration was not admissible for the purpose of attacking Edmund Gora's credibility; rather, this testimony was admissible for purposes of challenging the cause of Edmund Gora's negative perception of the law enforcement community. As such, it was improper for counsel to indicate that Edmund Gora was less credible because he was "doing time." Nonetheless, considering that evidence of Edmund Gora's incarceration was properly admitted for another purpose, this brief reference to otherwise admissible testimony did not rise to the level of reversible error. And, in any event, even if it had, plaintiffs waived any such argument.

Judge Kocoras, in making his ruling regarding the admissibility of testimony about Edmund Gora's past convictions and current incarceration, explained for what purposes he deemed this testimony admissible. If the plaintiffs felt that defense counsel's closing argument suggested an improper use of such testimony, then it was the plaintiffs' obligation to object in order to preserve this issue for appeal. Counsel has not indicated that such an objection was made, and we find no such objection in the record.

### III.

For the above reasons, we affirm.