Erick **CHARLES**, Plaintiff,

v.

Thomas **COTTER**, et al., Defendants.

No. 93 C 2416.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 12, 1994.

Erick Charles, pro se.

Bruce H. Bornstein, Alan Michael Freedman, Freedman & Bornstein, Chicago, IL, for plaintiff.

Mary Margaret Murray, John F. McGuire, Joseph M. Polick, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

In this civil rights action under 42 U.S.C. § 1983, plaintiff Erick Charles ("Charles") sues seven defendant Chicago police officers (collectively, "defendants") alleging that they used excessive force during the course of his arrest on February 7, 1992. Trial is set for September 19, 1994. Presently before the court are plaintiff's motion to bar certain documents at trial and for sanctions, and plaintiff's and defendants' motions *in limine* to exclude certain evidence at trial.

### PLAINTIFF'S MOTION TO BAR CERTAIN DOCUMENTS AND FOR SANCTIONS

Charles moves to bar the use at trial of certain documents obtained informally by defendants from the Evanston Police Department after the close of discovery. The documents consist of a fifteen page incident report, a one page police department form, and a four page witness statement from an individual named Willie Etienne, all concerning an incident on September 11, 1991, in which Charles suffered injuries and was transported to St. Francis Hospital in Evanston for emergency treatment. Defendants maintain that the documents contain probative evidence of the fact that the injuries Charles claims to have suffered at the hands of the defendants on February 7, 1992, were actually incurred during the September 11, 1991 incident.

Discovery closed in this case on June 20, 1994. The foregoing documents were obtained without subpoena or other formal means of discovery on June 28 through July 1, 1994, and were served on Charles' counsel on July 1, 1994. The documents were also listed in the parties' final pretrial order which was tendered to the court. Charles

objects to the use of these documents at trial contending that they were improperly obtained by defendants' counsel after the close of discovery and that he was prejudiced thereby.

 Charles' arguments to exclude this highly probative evidence are not compelling. First, Charles emphasizes that the documents were obtained after the close of discovery. However, it does not follow from the fact that the court has set a date for the close of discovery, that all investigation into a party's claims or defenses must come to a halt on that date. The parties remain free to track relevant evidence—including, as in the instant case, obtaining information from co-operative third parties. Therefore, the fact that the Evanston Police Department records were obtained after the close of discovery is not a sufficient ground for excluding this probative evidence, particularly where, as here, the material was provided to Charles as soon as it was obtained and well in advance of the filing of a final pretrial order.[1]

 Charles also emphasizes the fact that the documents were obtained by informal means not available to him. Charles speculates in his motion and reply that defendants obtained the documents informally by sending a fellow Chicago Police Officer to the Evanston Police Department who was able to obtain the documents, without following normal Evanston Police Department procedures, simply by virtue of being a fellow law enforcement officer. Charles, on the other hand, was told by the Evanston Police Department that if he wanted access to the documents he would have to subpoena them and pay a twenty-dollar fee. Thus, simply put, Charles argues that defendants enjoyed an advantage over him with respect to obtaining the documents. Significantly,

Charles does not argue that he could not obtain the documents, only that he would have faced greater impediments than defendants. However, this is not a problem unique to this lawsuit. In virtually all litigation there are third-parties possessing probative evidence who are willing to volunteer the evidence to one party and not the other; the latter must resort to formal means of discovery including subpoena. Thus, Charles' protestation that defendants were able to obtain the challenged documents through channels unavailable to him, also does not justify excluding this probative evidence.

 Nor can the court conclude that Charles has suffered any prejudice because of defense counsels' conduct. Charles notes that the September 11, 1991, incident was the subject of a complaint he filed and that an internal investigation regarding the incident was conducted. Charles further notes that defendants effectively thwarted his efforts to discover the documents contained in the OPS file regarding this incident claiming that such documents were irrelevant to his section 1983 claims; and, in view of this fact, Charles argues that he is prejudiced by defendants' belated recognition of the relevance of the September 11, 1991 incident. Were it not for this court's August 10, 1994 ruling, we might agree. However, on August 10, 1994, the court granted Charles' motion for reconsideration of prior rulings denying his discovery of defendants' personnel records and disciplinary files. In view of the fact that Charles has no longer been foreclosed from reviewing the OPS files, the court cannot conclude that he has suffered any prejudice in this regard.

Charles also suggests that he was prejudiced by the fact that defendants did not employ formal means of discovery because he was given no opportunity to contest the re-

---

1. Of course, the court agrees with Charles that it would have been preferable for defendants to have acquired the documents through means of formal discovery. Defendants knew or should have known of the possibility of the existence of these documents since plaintiff's deposition on November 5, 1993, or at least since the time that they obtained Charles' medical records from St. Francis hospital. At the very least defendants' counsel was remiss in not seeking out the police records in a timely fashion. However, the court does not find that the circumstances warrant the drastic measure of excluding such probative evidence. Further, the court notes that plaintiff's counsel appear to be equally responsible for the failure to obtain these records, pursuant to a subpoena, in a timely fashion. Plaintiff's counsel surely were aware of the existence of these documents no later than defendants' counsel (if not sooner). Under Rule 11, plaintiff's counsel have an obligation to conduct a reasonable inquiry into the evidentiary support of their client's allegations and other factual contentions. FED. R.CIV.P. 11(b)(3).

ceipt of the documents. However, in view of the potentially high probative nature of the documents, the court cannot conclude that it would have denied formal discovery of the materials after the close of discovery—and it is noteworthy that Charles has identified no basis other than timeliness to exclude the documents—therefore, Charles' speculative claim of prejudice is insufficient to justify exclusion of the documents.

The court has considered all of Charles' other contentions not specifically mentioned herein and finds them to be without merit. For the foregoing reasons Charles' motion to bar use of certain documents at trial, and for sanctions is denied.

## MOTIONS IN LIMINE

■ Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials. *Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984). Guidelines governing motions *in limine* were recently set forth in *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398 (N.D.Ill.1993), as follows:

> This court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine.*

*Id.* at 1400–01. With these guidelines in mind, we turn to the motions before the court.

*Plaintiff's motion to exclude evidence of his criminal convictions*

Pursuant to FED.R.EVID. 609 and 403, Charles moves to exclude all evidence relat-ing to his criminal convictions, arguing that such evidence has no probative value to the issues at bar and that any probative value is substantially outweighed by the danger of unfair prejudice. As set forth below, Charles' motion is granted in part and denied in part.

Rule 609 permits admission, subject to Rule 403, of evidence of past felony convictions for purposes of impeaching a civil witness. Under Rule 403, such evidence may be excluded where the probative value is substantially outweighed by the danger of unfair prejudice. The Seventh Circuit set forth the proper limits of the use of evidence of past felony convictions in *Campbell v. Greer,* 831 F.2d 700 (7th Cir.1987), wherein the court stated that although a felony conviction may be used to impeach a witness in a civil action:

> this is not to say that the opposing party may harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case. He may not. Essentially all the information the cross-examiner is permitted to elicit is the crime charged, the date, and the disposition.

*Id.* at 707. *See also Gora v. Costa,* 971 F.2d 1325, 1330 (7th Cir.1992) (noting that "all that is needed to serve the purpose of challenging the witness's veracity is the elicitation of the crime charged, the date, and the disposition"). Both *Campbell* and *Gora* involved application of Rule 609 as it read prior to its 1990 amendments. The Supreme Court held that the pre-amendment Rule 609 required "a judge to permit impeachment of a civil witness with evidence of prior felony convictions regardless of ensuant unfair prejudice to the witness or the party offering the testimony." *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 527, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989). The 1990 amendments to Rule 609, explicitly condition the admissibility of evidence of past felony convictions offered for impeachment of a witness in a civil action on a balancing of probative value and unfair prejudice pursuant to Rule 403.

Rule 609 embodies "[t]he proposition that felons perjure themselves more often than other, similarly situated witnesses." *Campbell*, 831 F.2d at 707. As the Seventh Circuit noted, this empirical proposition may or may not be true; nevertheless, the premise of Rule 609 "that crookedness and lying are correlated," is not for the court to question. Accordingly, the court must conclude that Charles' prior felony convictions are probative evidence of his credibility. The danger of unfair prejudice posed by cross-examination regarding a witness's prior felony convictions is significantly reduced, albeit not eliminated, by adhering to the clear limits on such examination set forth in *Campbell*. Thus, the court finds that the probative value of properly limited cross-examination regarding Charles' prior felony convictions is not substantially outweighed by the danger of unfair prejudice. Accordingly, defendants may cross-examine Charles as to the crime charged, the date, and the disposition (*i.e.*, guilty or not guilty—not length of sentence) with respect to felony convictions during the past ten years—including his January 25, 1993 conviction stemming from his arrest on February 7, 1992. However, with respect to felony convictions more than ten years old, the court finds that the probative value of such convictions does not substantially outweigh their prejudicial effect. FED.R.EVID. 609(b). Defendants should be sufficiently able to attack the veracity of Charles' testimony by cross-examining him as to his convictions on January 25, 1993 (delivery of controlled substance), November 8, 1987 (armed robbery), and October 7, 1986 (manufacture and delivery of controlled substance) without resorting to a "piling on" effect by using his older convictions. Whatever marginal impeachment effect might be added by throwing in his February 2, 1984 (aggravated battery), September 27, 1979 (armed robbery),

and March 23, 1979 (burglary) convictions is substantially outweighed by the unfair prejudice of further suggesting to the jury that Charles is an evil man who does not deserve any consideration of his claims. *See Devenport v. DeRobertis*, 653 F.Supp. 649, 659 (N.D.Ill.1987), *modified on other grounds and aff'd*, 844 F.2d 1310 (7th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988).

A few additional words are warranted regarding Charles' January 25, 1993 conviction arising out of his arrest on February 7, 1992. Charles pled guilty to possession of a controlled substance with intent to deliver and delivery of a controlled substance. Illinois courts treat a guilty plea as an admission by the defendant of the facts alleged in the complaint—an admission that may be used against the defendant in subsequent proceedings. *See Brown v. Green*, 738 F.2d 202, 206 (7th Cir.1984). Federal courts must give preclusive effect to state court judgments whenever the courts of the state from which the judgment was rendered would do so. 28 U.S.C. § 1738. Accordingly, this court must treat Charles' guilty plea as an admission of the facts alleged in the complaint against him; and, this admission is binding against Charles in the instant case.[2] While the court finds the underlying facts of Charles' arrest on February 7, 1992 to be relevant to this trial, in order to properly limit the introduction of unnecessary detail [3], the court directs the parties to confer and submit a stipulation, based on the allegations in the complaint against Charles, regarding those facts.

*Plaintiff's motion to exclude testimony of Dr. Jorge Del Castillo*

Defendants maintain that Charles is using photographs of injuries he sustained on Sep-

---

2. Accordingly, Charles is estopped from arguing in this case that he was not guilty of the offenses to which he pled guilty.

3. This court is well aware of—and Charles' motions *in limine* highlight—the ease with which the trial of a civil rights claim brought by a plaintiff with as unsavory a history as Charles can be effectively (and prejudicially) transformed into an attack on the character of the plaintiff by parading every last disreputable detail of the plaintiff's life before the jury. *See Geitz v. Lind-*

*sey*, 893 F.2d 148, 151 (7th Cir.1990). At the same time, the court is equally aware of the defendants' right to introduce relevant evidence—so long as its probative value is not outweighed by the danger of unfair prejudice. Thus, the court must exercise its discretion in balancing defendants' legitimate right to introduce relevant evidence with the plaintiff's right not to have the trial of his civil rights claims undermined by the excessive and prejudicial introduction of character and "bad acts" evidence.

tember 11, 1991, as evidence of injuries he allegedly sustained at the hands of the defendants on February 7, 1992. Charles anticipates that the defendants will call Dr. Del Castillo, who is board certified in emergency medicine, to testify that the plaintiff's injuries depicted in these photographs occurred on a date other than the date of the alleged incident; that the injuries were not caused by the defendants; and that a comparison of the photographs with one taken at the Cook County Jail indicates that Charles did not receive the injuries he has alleged. Charles contends that Dr. Del Castillo can do no more than look at the photographs and give an opinion about what they portray and that Dr. Del Castillo is no more qualified to look at the photographs and draw inferences than the jurors. Defendants argue that Dr. Del Castillo's expertise enables him to testify about Charles' subjective complaints, objective examinations, diagnoses, and treatment as documented in medical records from September 11, 1991 and February 7, 1992. More specifically, defendants maintain that Dr. Del Castillo's testimony will assist the jury in understanding the documented medical treatments and associating the treatments with the plaintiff's injuries as depicted in the photographs.

Notwithstanding Charles' somewhat misleading characterization of Dr. Del Castillo's anticipated testimony, the court denies Charles' motion to exclude this testimony. It is clear to the court that defendants intend to have Dr. Del Castillo review Charles' medical records from September 11, 1991 and February 7, 1992, and draw an inference based on his specialized knowledge of emergency medicine as to whether the injuries depicted in the photographs appear to match the injuries diagnosed and treated on September 11, 1991 as opposed to February 7, 1992. Such testimony plainly pertains to scientific knowledge and will assist the trier of fact in understanding the evidence or

determining a fact in issue; thus, it is proper matter for expert testimony. *See O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1106 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2711, 129 L.Ed.2d 838 (1994). The court believes that the average juror would not have the ability to decipher medical records describing diagnoses and treatments and then correctly match those records to a photograph of injuries. Accordingly, Dr. Del Castillo will be permitted to testify as to his opinions regarding whether the photographs correspond to the injuries documented in the medical records.[4]

*Plaintiff's motion to exclude evidence relating to his arrests and gang affiliations*

Charles moves to exclude evidence relating to his previous arrests and gang affiliations other than arrests by any of the defendants, contending that such evidence is irrelevant and prejudicial. Defendants argue that to the extent that they seek to introduce evidence of Charles' prior arrests, such evidence would be elicited to show Charles' motive for denying that he was engaged in drug activity at the time of his arrest and his motive for trying to evade arrest; additionally, defendants state that depending on Charles' testimony, evidence of his prior arrests might be used for impeachment or to rebut his claims. With respect to Charles' gang affiliations, defendants argue that, to the extent that they seek to introduce such evidence, it would be offered to prove Charles' knowledge of gang affiliations on September 11, 1991, his identity as a member or former member of the Los Angeles Crips gang on September 11, 1991, and an absence of mistake or accident regarding injuries Charles received on September 11, 1991.

We address the latter issue first. As discussed above, it is defendants' contention that certain photographs sought to be

---

4. Charles' motion seeks to exclude any testimony by Dr. Del Castillo regarding the credibility of the parties, when and where the plaintiff received his injuries, and whether the plaintiff's injuries were inflicted by the defendants on February 7, 1992. It is not at all clear that defendants intend to offer any such testimony by Dr. Del Castillo; however, for the sake of thorough-

ness the court grants Charles' motion to the extent that it seeks to bar Dr. Del Castillo from giving improper opinion testimony about the parties' credibility, or the location where Charles received the injuries depicted in the photographs. This type of speculative testimony would be well outside the scope of Dr. Del Castillo's expertise.

introduced as evidence by Charles depict injuries he suffered on September 11, 1991 not February 7, 1992. Thus, it is certainly relevant to defendants' case that Charles suffered injuries on September 11, 1991, and that Charles may have suffered these injuries in a physical attack; however, that these injuries may have been gang-related adds absolutely no probative value to defendants' case. Additionally, the court rejects defendants' suggestion that Charles' gang affiliation may be admissible under Rule 608(b) as a specific instance of conduct probative of truthfulness or untruthfulness. Identifying Charles as a gang member is unfairly prejudicial insofar as it encourages the inference that Charles is an evil and menacing person. Because the court finds that the prejudicial effect of evidence of Charles' gang affiliation substantially outweighs its probative value, Charles' motion to exclude any such evidence is granted.

■ Charles' motion to exclude evidence of his prior arrests (except those arrests by the defendants)—and defendants' response—highlight the problems posed by motions *in limine* which are presented to the court in the abstract without the benefit of the context of a trial. Charles asks the court to rule, as a general matter, that any evidence of his prior arrests is inadmissible because its prejudicial effect substantially outweighs its probative value. Such a ruling would be premature and an abuse of the court's discretion. Any ruling on the admissibility of Charles' specific prior arrest evidence must be made in the context of a proffer during the trial.

■ Nevertheless, the court does find that the probative value of Charles' general arrest history as evidence of his motive to avoid arrest is substantially outweighed by its prejudicial effect and therefore such evidence will be inadmissible for the purpose of proving motive to avoid arrest. Additionally, as noted above, Charles is estopped from denying that he was engaged in drug activity

on February 7, 1992, *see supra* note 1; therefore, defendants' argument that evidence of Charles' prior arrests is probative of his motive for such a denial is moot.

■ As defendants correctly note, depending on Charles' testimony at trial, evidence of his prior arrests could be relevant for impeachment purposes or to rebut his claims. For this reason, the court will not rule at this time that evidence of Charles' prior arrests are *per se* inadmissible. However, before defendants seek to introduce any evidence of—or cross-examine Charles with respect to—prior arrests, they shall first advise the court and obtain a ruling, outside of the presence of the jury, concerning the admissibility of the evidence or the propriety of the cross-examination.

Accordingly, Charles' motion to exclude evidence of his prior arrests is granted in part and denied in part.

*Plaintiff's motion to exclude evidence relating to his employment termination*

■ Charles moves to exclude evidence of his prior employment terminations. Defendants argue that because Charles' employment history reveals that he lied to previous employers about his criminal history—and was terminated from one position as a result thereof—cross-examination regarding such specific acts of misconduct is proper under Rule 608(b) because it bears directly on Charles' truthfulness or untruthfulness. Charles argues that even if such evidence is probative of his truthfulness, it should be excluded because of its prejudicial effect—apparently, the "back-door" introduction of evidence regarding his prior criminal history. However, since the court is permitting evidence of Charles' prior felony convictions, the prejudicial effect of admitting evidence that Charles lied about his criminal history on an employment application is minimal. Therefore, the court denies Charles' motion to exclude evidence or any questions concerning his prior employment terminations.[5] Defen-

---

5. However, the court does not intend this ruling to provide defendants with a "back door" through which to introduce evidence of Charles' convictions which are more than ten years old. Defendants do not identify with particularity the

misrepresentation allegedly made by Charles; however, in the event that the misrepresentation concerns a conviction more than ten years old, defendants shall first advise the court and obtain a ruling, outside of the presence of the jury,

dants are bound, of course, by Rule 608(b)'s prohibition of extrinsic evidence as proof of specific instances of conduct.

*Plaintiff's motion to exclude evidence relating to his prior hospitalizations*

■ Charles moves to exclude evidence of his prior hospitalizations. Defendants contend that such evidence is relevant because Charles is using photographs of injuries he sustained on September 11, 1991 as evidence of injuries he allegedly sustained at the hands of the defendants on February 7, 1992. Because evidence as to the nature and extent of Charles' September 11, 1991 injuries is relevant to his claim that the photographs in question reflect injuries he sustained on February 7, 1992, the court denies Charles' motion to exclude evidence of his prior hospitalizations.

*Plaintiff's motion to exclude evidence relating to defendants' commendations, awards or honors*

■ Charles moves to exclude evidence of commendations, awards or honors conferred upon defendants, arguing that such evidence is not relevant and unfairly prejudicial. Defendants respond that in the event that plaintiff is allowed to introduce negative material from their disciplinary files, evidence relating to their commendations, awards and honors would be relevant in rebutting plaintiff's evidence. However, to the extent that the court allows plaintiff to introduce any evidence from defendants' disciplinary files, such evidence is only admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. FED.R.EVID. 404(b). It is not admissible for purposes of showing that the defendants acted in conformity with a bad character. Accordingly, the court finds no merit in defendants' claim that evidence of their commendations, awards, or honors would be relevant to rebutting any evidence of prior acts of misconduct.[6] Therefore, Charles' motion to exclude

evidence of defendants' commendations, awards or honors is granted. In the event that Charles is permitted to introduce evidence from defendants' disciplinary files, defendants may renew their objection to this motion *in limine* and the court will reconsider, in the context of the disciplinary record evidence, whether the proposed evidence serves to rebut the admitted disciplinary record evidence.

*Plaintiff's motion to exclude evidence of drug activity at his residence*

Charles moves to exclude evidence regarding drug activity at his residence, including evidence of anonymous calls received by the police and observations of suspected drug activity at plaintiff's residence. Plaintiff contends that such evidence is irrelevant and prejudicial, and, with respect to reports of drug activity, such evidence is inadmissible hearsay. Defendants maintain that such evidence is relevant and material because it shows that they had a reasonable basis for being present at Charles' residence and why they had contact with him. Conversely, defendants argue that to bar such evidence would tend to create the prejudicial and inaccurate inferences that defendants had no reasonable basis for being present at Charles' residence, that they had prior knowledge that Charles lived at the residence, and that they had unjustifiably targeted his residence. Regarding plaintiff's hearsay argument, defendants contend that the evidence would not be introduced for the truth of the matter asserted but rather would be elicited to show the effect on the listener.

■ As set forth above, the court has directed the parties to confer and present a stipulation based on the allegations in the complaint against Charles as to the facts surrounding his arrest on February 7, 1992. This stipulation should serve to provide adequate context for the defendants' presence at Charles' residence on the night in question without resorting to unnecessary, prejudicial

---

concerning whether cross-examination regarding the employment termination will be permitted.

**6.** In fact, the court strongly suspects that evidence of defendants' commendations, awards or

honors could only serve the improper function of providing evidence of defendants' character for the purpose of proving action in conformity therewith on the night in question.

references to reports, anonymous or otherwise, of drug activity at Charles' residence. Thus, Charles' motion to exclude evidence of drug activity at his residence is granted in part: No evidence of reports of drug activity at Charles' residence shall be admissible. The court cautions Charles, however, that if he opens the door to the issue of whether the police had adequate cause for being at his residence on February 7, 1992, or denies that drug related activity was taking place at his residence on February 7, 1992, the court will reconsider this ruling. Charles' motion to exclude evidence of drug activity at his residence is denied in part in the following respects: any allegations of drug activity contained in the complaint against Charles are admissible, and defendants shall be allowed to testify as to any drug activity they personally observed at Charles' residence on the night in question insofar as that drug activity is directly related to Charles' arrest.

*Plaintiff's motion to exclude evidence of his drug use*

Charles moves to bar any questioning regarding his or any other witness' prior drug use. Charles contends that such evidence is irrelevant, unfairly prejudicial, and is not probative of veracity, *see United States v. Boyd,* 833 F.Supp. 1277, 1359 (N.D.Ill.1993) ("As a general rule, a witness' past drug use is not probative of veracity and, thus, is not a proper subject for cross examination") (citations omitted). Defendants, also citing *Boyd,* argue that such evidence is relevant "where a witness' memory or mental capacity is legitimately at issue," *id.,* and that the court "may admit evidence of a witness' drug use as it relates to his or her inability to recollect and relate." *Id.* (quoting *United States v. Robinson,* 956 F.2d 1388, 1397 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 654, 121 L.Ed.2d 581 (1992)). In *United States v. Cameron,* 814 F.2d 403 (7th Cir.1987), the Seventh Circuit noted that evidence of a witness' drug use:

> may be admitted where the memory or mental capacity of a witness is legitimately at issue. At the same time, however, there is considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively dis-

count the witness' testimony. *See* Fed. R.Evid. 403.

*Id.* at 405. Accordingly, the Seventh Circuit has concluded, "A district court may bar cross-examination about a witness' illegal drug use when it is used 'for the sole purpose of making a general character attack.'" *Robinson,* 956 F.2d at 1397 (quoting *Cameron,* 814 F.2d at 405).

■ Once again, the court cannot rule in the abstract on Charles' motion to exclude evidence of prior drug use. The context provided by trial testimony is required in order for the court to determine whether a witness' memory or mental capacity is legitimately at issue or whether the evidence is sought merely to impugn the witness' character. Therefore, at this time, Charles' motion to exclude evidence of prior drug use is denied. However, the parties are directed not to mention this evidence in front of the jury until such time as the defendant obtains a ruling, outside the presence of the jury, that this evidence is admissible.

*Plaintiff's motion to exclude evidence of his present incarceration, length of his present sentence, and all previous sentences*

Charles moves to exclude any evidence or testimony regarding the fact that he is presently incarcerated, the length of his present sentence, and the length of all previous sentences. Charles contends that such evidence is irrelevant and unfairly prejudicial. Defendants maintain that evidence of Charles present and previous incarcerations may be relevant as to proof of motive for resisting arrest and may be relevant if Charles claims emotional distress damages. *See e.g. Gora v. Costa,* 971 F.2d 1325, 1331 (7th Cir.1992) (finding evidence of incarceration was properly admitted where it related to plaintiff's claims of emotional injury).

Specifically with respect to civil rights cases which "often pit unsympathetic plaintiffs-criminals, or members of the criminal class ... against the guardians of the community's safety," *Geitz v. Lindsey,* 893 F.2d 148, 151 (7th Cir.1990), the Seventh Circuit has noted that "evidence of current incarceration is highly prejudicial, and therefore

courts should not be quick to admit such evidence." *Gora,* 971 F.2d at 1331.

█ Defendants' argument that Charles' present and prior incarcerations may be relevant as to proof of his motive for resisting arrest is, perhaps, true. However, because the court finds the probative value of such evidence in this regard to be so insignificant in comparison to its prejudicial effect[7], the court holds that evidence of Charles' present and prior incarcerations shall be inadmissible for purposes of showing Charles' motive to resist arrest.

█ Additionally, there is no indication in this case that Charles is seeking any damages for emotional suffering with respect to which evidence of his present or prior incarcerations would be relevant. Therefore, the court grants Charles' motion to exclude any evidence or testimony regarding the fact that he is presently incarcerated, the length of his present sentence, and the length of all previous sentences. However, in the event that Charles does make a claim for such damages, the court will reconsider this ruling upon proper motion by defendants.

*Plaintiff's motion to exclude evidence of defendants' financial condition*

█ Charles moves to bar any questioning of the defendants regarding their financial condition. In response, defendants state that they do not intend to introduce any such evidence. Accordingly, plaintiff's motion is denied as moot.

*Defendants' motion to exclude evidence of prior complaints and/or lawsuits against defendants*

█ In the wake of this court's August 10, 1994, ruling granting Charles' motion for reconsideration of prior rulings denying discovery of defendants' personnel files and disciplinary reports, the court has made it per-

fectly clear to the plaintiff that evidence of prior misconduct by defendants would only be admissible if it fell within the ambit of Federal Rule of Evidence 404(b). In a hearing on August 24, 1994, the court further stated that it would only allow evidence pertaining to prior allegations of misconduct by the defendants if the evidence was adequate to clearly establish a "modus operandi" of the defendants. Plaintiff was directed to submit to the court any such evidence for a determination of whether it satisfied this requirement. To date, plaintiff has not presented any evidence to the court relating to complaints or lawsuits against the defendants. Accordingly, defendants' motion to exclude such evidence is premature and, therefore, denied. In the event that plaintiff submits to the court evidence of complaints and/or lawsuits against any of the defendants, the court will entertain defendants' present arguments in ruling on the admissibility of plaintiff's proffered evidence.

*Defendants' motion to exclude evidence of the arrest, alleged strip search, and disposition of charges against witness Buffy Michelle Cummings*

█ Defendants move to exclude any testimony by plaintiff or his common-law wife Buffy Michelle Cummings regarding Ms. Cummings' arrest, alleged strip search and the disposition of her charge.

Ms. Cummings was present at Charles' residence at the time of his arrest and claims to have witnessed Charles' alleged beating by the defendants. Ms Cummings was also arrested at that time and charged with disorderly conduct. She contends that she was falsely arrested, illegally strip searched, and that the charge against her was eventually dropped. Defendants seek to exclude testimony concerning the propriety of her arrest, the alleged strip search, and the disposition of her charge, contending that any probative

---

7. Whether an individual with a lengthy arrest or conviction history is more motivated to avoid arrest than a "first timer" is, at best, an empirical question. However, without presuming to know the answer to this question, the court notes that the life consequences of even one arrest or conviction can be so profound that even first timers are likely to have substantial motivation to avoid or resist arrest. Moreover, a convincing argument could be made that a person more familiar with the criminal justice system, such as plaintiff, has fully weighed the consequences of his criminal activities and is prepared to accept a normal arrest as a consequence of those activities.

value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading of the jury.

Defendants' motion need not detain the court long. Cummings' testimony as to the events that took place when the defendants entered Charles' residence—including testimony that one of the defendants held a gun to Cummings' head and told her he was going to blow it off and testimony that Cummings was subjected to a strip search—amounts to testimony about acts by the defendants that are intricately related to the conduct alleged by Charles. At the very least, the evidence is plainly relevant insofar as it sets the scene, puts Charles' allegations in context, and provides a description of Charles' ordeal. The testimony is also relevant to and probative of the objective reasonableness of defendants' conduct at the time of Charles' arrest.

Defendants go to great lengths to argue that defendants' alleged conduct towards Cummings is not related to their conduct towards Charles [8] and that the former conduct does not make Charles' claim that he was subject to a brutal attack more likely than not. The court cannot agree. Defendants' apparently fail to recognize that although the alleged conduct appears, at first blush, to be directed solely at Cummings, holding a gun to Charles' common-law wife's head and threatening to kill her in Charles' presence and/or humiliating her by subjecting her to a strip search in his presence also amount to acts of terror directed at Charles.

There can be little doubt that the challenged testimony, if believed, will be damaging to the defendants; however, that is not the yardstick by which to measure the danger of unfair prejudice. *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir.1985). If, as defendants suggest, the challenged testimony serves to inflame the jury, it is only because of the nature of the alleged conduct by the defendants. Moreover, defendants'

arguments notwithstanding, the court does not find the content of the challenged testimony to be so emotionally provocative as to create a substantial danger of prejudicing the jury.

■ However, the court does agree with defendants that the ultimate disposition of Cummings' disorderly conduct charge is of marginal probative value to the issues to be decided by the trier of fact in this case. Moreover, this minimal probative value is substantially outweighed by its undue prejudicial effect—namely, that the evidence encourages the inference that Cummings' arrest was completely groundless when, in fact, the State's decision not to prosecute Cummings may not have rested on such a basis at all. Therefore, evidence of the disposition of Cummings' charge will be excluded.

For the foregoing reasons, defendants' motion to exclude testimony regarding the circumstances surrounding Cummings' arrest and alleged strip search is denied. The defendants' motion to exclude the disposition of charges against Cummings is granted.

*Defendants' motion to exclude evidence relating to broken doors*

Defendants move to exclude photographs and testimony regarding broken doors leading to Charles' residence which he claims were broken by the police when they entered his apartment the night of his arrest. Defendants argue that such evidence would improperly suggest to the jury that the defendants unlawfully entered plaintiff's residence and would improperly suggest that since the defendants used excessive force to enter the apartment, they also used excessive force to effect his arrest. Also, defendants argue that since Charles has made no claim for false arrest or for property damage, the evidence is irrelevant. Charles contends that the evidence of broken doors provides context for understanding the circumstances of his arrest. Additionally, Charles contends

---

**8.** Defendants' related suggestion that Charles has no standing to vindicate Cummings constitutional rights is, of course, is a red herring—Charles is not seeking to vindicate Cummings' rights but merely to provide an accurate and complete narrative of the events surrounding his arrest.

However, to the extent that defendants' fear that the jury might improperly consider Cummings' alleged injuries in determining defendants' liability or damages in this case, they may submit an appropriate jury instruction on the issue.

that the evidence is impeaching and goes to the credibility of defendants in that the defendants all deny breaking through the door, and, Paramedic Koch will testify that one of the defendants told him that Charles was injured when he put his head through the glass door while trying to escape.

As an initial matter, we note that defendants' arguments as to the prejudicial effect of photographs and testimony regarding the broken doors are not compelling; the fact that the police may have had to break down doors to enter a suspect's residence does not necessarily, or even probably, give rise to the inference that the police entered *unlawfully* or with *excessive force*. Doors frequently get broken down during arrests, particularly drug arrests; and, it is reasonable to presume that jurors understand this. Therefore, the court finds little merit in the argument that evidence or testimony regarding the broken doors will lead to prejudicial inferences. Conversely, the court finds the evidence potentially relevant in several respects. First, as Charles contends, the circumstances of defendants' entry into his residence are sufficiently connected to the circumstances of his arrest as to set the scene and put the circumstances of the arrest in context. Second, to the extent that defendants deny breaking the door or entering the residence by entering the door, the evidence is directly relevant. Third, the photographs may be relevant if paramedic Koch testifies that one of the defendants told him that Charles was injured when he put his head through the door while trying to escape. For the foregoing reasons, the court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Defendants' motion to exclude evidence of broken doors is denied.

*Defendants' motion to exclude evidence relating to a false case report*

Defendants anticipate that Charles will introduce evidence that defendant Cotter prepared a false vice case report in an attempt by defendants to provide an untruthful explanation for plaintiff's injuries. Defendants argue that since Charles has made no conspiracy or cover-up claim in this action, evidence that a false vice report was prepared is irrelevant and unfairly prejudicial because it suggests that a cover-up was involved. To the extent that this evidence establishes that a cover-up was involved, such evidence is damaging to the defendants—because it may indicate that defendant Cotter believed he needed to hide something—but it is not unfairly prejudicial. Furthermore, this evidence goes straight to the heart of defendant Cotter's credibility—which will be a critical issue in this case. Defendants' motion to exclude evidence relating to a false vice case report is denied.

*Defendants' motion to exclude evidence of indemnification by the City of Chicago*

The court grants defendants' unopposed motion to exclude evidence of, or reference to, the fact that defendants may be indemnified or reimbursed by the City of Chicago.

*Defendants' motion to bar references to defendants' attorneys as Assistant Corporation Counsels*

The court grants defendants' motion to bar references to defendants' attorneys as Assistant Corporation Counsels for the City of Chicago. Besides noting that this is defendants' attorneys' job title, plaintiff makes no argument as to why any such reference is necessary or relevant. Referring to defendants' attorneys as Assistant Corporation Counsels, invites the inference that the City is paying for the defense and will pay any judgment that is entered against the defendants. This implicit "deep pocket" suggestion serves no purpose and is as prejudicial to the defendants as suggesting to the jury directly that the City will indemnify or reimburse the defendants. Plaintiff has no objection to excluding the latter suggestion and raises no valid objection to excluding the former. The motion is granted.

*Defendants' motion to exclude evidence that defendants violated CPD rules, orders, regulations, or training*

Defendants move to exclude any evidence relating to whether the defendants and/or non-defendant police witnesses breached police department rules, regulations, orders, or

training during the arrest, custody and processing of the plaintiff. Defendants argue that violations of departmental rules or regulations do not give rise to a constitutional claim under section 1983; therefore, defendants argue the introduction of such evidence is irrelevant, confusing, and prejudicial. Defendants assert that if the jury is presented with evidence of such violations, it would be confused and unable to separate the purported rule/regulation violation from the alleged constitutional violation. In response, Charles represents that he will only use the challenged evidence for purposes of impeachment and "refreshing the recollection of witnesses."

▮▮▮▮▮ Because the court finds evidence that the defendants violated police rules, regulations etc., to be relevant and probative with respect to Charles' claim that the defendants violated his constitutional rights, the court will deny defendants' motion and permit Charles to introduce the challenged evidence; however, the court will hold Charles to his representation and will limit Charles' use of such evidence to impeachment and "refreshing" the witnesses. The court finds that the threat of prejudice and confusion envisioned by defendants can be adequately alleviated by proper jury instructions as to the meaning or significance of the purported rule violations.[9]

*Defendants' motion to exclude references to other police misconduct or the absence of a videotape*

Defendants move to bar any reference of any alleged instances of misconduct by other police officers which have been the subject of current events (e.g., Rodney King) or any references to "videotape" (*e.g.,* "There was no video camera at the scene of plaintiff's arrest."), contending that such references are irrelevant and designed solely to inflame the passions of the jury. Charles responds that he does not plan on mentioning other instances of police misconduct although the issue may surface during voir dire and, if so, it may be a proper subject of discussion. Defendants reply that references during voir dire would taint the venire and improperly influence prospective jurors.

▮▮▮▮▮ In view of Charles' response, defendants' motion is largely moot; and, to the extent that it is not, the court agrees that the subject of the prospective jurors exposure to cases of police misconduct (including the more publicized cases) may be wholly appropriate for voir dire. Moreover, the court cannot conclude at this time, that mere references to other acts of police misconduct, to "Rodney King," or to "videotape" are unduly prejudicial. Accordingly, defendants' motion is denied. The court notes further that trial judges "exercise broad discretion in controlling counsels' arguments and in 'ensur[ing] that argument does not stray unduly from the mark.'" *United States v. Wables,* 731 F.2d 440, 449 (7th Cir.1984) (quoting *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975); *see also United States v. Grabiec,* 563 F.2d 313, 319 (7th Cir.1977). While the court will entertain any objection to counsel's arguments at the appropriate time, it is unwilling to muzzle Charles' counsel at this early phase of trial.

*Defendants' motion to exclude witnesses from the courtroom*

Defendants' unopposed motion, pursuant to FED.R.EVID. 615, to exclude witnesses, oth-

---

**9.** The court respectfully declines to follow *Walker v. Saenz,* No. 91 C 3669, 1992 WL 317188 (N.D.Ill. Oct. 27, 1992), insofar as it determined that jury instructions would be inadequate to prevent the jury from assuming that a violation of police regulations also constitutes a constitutional violation or from confusing the standards for finding a rule violation with the standards for finding a constitutional violation. A jury is presumed to follow the court's instructions. *See United States v. L'Allier,* 838 F.2d 234, 242 (7th Cir.1988) (limiting jury's consideration of the evidence relating to each count separately, and noting "[o]ur theory of trial relies upon the ability of a jury to follow instructions") (quoting

*United States v. Percival,* 756 F.2d 600, 610 (7th Cir.1985)); *cf. United States v. Robinson,* 956 F.2d 1388, 1396 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 654, 121 L.Ed.2d 581 (1992) (finding that the prejudicial impact of Rule 404(b) evidence was limited by instruction that the jury could not consider the evidence as evidence of guilt). In the instant case, the court does not believe that an substantial probability exists that the jury will be unable to follow an instruction distinguishing a Chicago Police Department rule violation from a constitutional violation, or an instruction regarding the standards for finding a constitutional violation.

er than the parties, from the courtroom is granted.

### CONCLUSION

Charles' motion to bar use of certain documents at trial [60–1] and for sanctions [60–2] is denied. Charles' motion *in limine* [63–1] is granted in part and denied in part. Defendants' motion *in limine* [64–1] [64–2] is granted in part and denied in part. Charles' motion to exclude evidence of his criminal convictions is granted in part and denied in part. Charles' motion to exclude the testimony of Dr. Jorge Del Castillo is denied. Charles' motion to exclude evidence of gang affiliation is granted. Charles' motion to exclude evidence of his prior arrests is granted in part and denied in part. Charles' motion to exclude evidence concerning his prior employment terminations is denied. Charles' motion to exclude evidence of his prior hospitalizations is denied. Charles' motion to exclude evidence of defendants' commendations, awards or honors is granted. Charles' motion to exclude evidence of drug activity at his residence is granted in part and denied in part. Charles' motion to exclude evidence of his or any other witness' prior drug use is denied. Charles' motion to exclude evidence of his present incarceration, length of his present sentence, and all previous sentences is granted. Charles' motion to exclude evidence of defendants' financial condition is denied as moot. Defendants' motion to exclude evidence of prior complaints and/or lawsuits against defendants is denied. Defendants' motion to exclude evidence of the arrest, strip search, and disposition of charges against witness Buffy Michelle Cummings is granted in part and denied in part. Defendants' motion to exclude evidence of broken doors is denied. Defendants' motion to exclude evidence relating to a false vice case report is denied. Defendants' motion to exclude evidence of or reference to indemnification by the City of Chicago is granted. Defendants' motion to bar references to defendants' attorneys as Assistant Corporation Counsels for the City of Chicago is granted. Defendants' motion to exclude evidence that defendants violated CPD rules, orders, regulations, or training is denied. Defendants' motion to bar references to other acts of police misconduct or to "videotape" is denied. Defendants' motion to exclude witnesses from the courtroom is granted.